[Cite as *State v. Tran*, 2014-Ohio-1829.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100057

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MY VAN TRAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566276-A

**BEFORE:** E.A. Gallagher, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Eric W. Dysert
Jordan & Sidoti, L.L.P.
50 Public Square
Terminal Tower, Suite 1900
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   James Hofelich
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, P.J.:

{¶1} My Van Tran ("Tran") appeals his conviction for aggravated robbery from the Cuyahoga County Court of Common Pleas. For the reasons set forth below, we affirm.

{¶2} On August 23, 2012, Tran took a bus to the Phnom Penh restaurant in North Olmsted, Ohio. Tran entered the restaurant and spoke with employee Roath Bun at the front counter. Tran asked to speak with Bun's mother, Phnom Penh cook Naveth Salay for the purpose of learning a recipe. While Roath was speaking with another customer, Tran entered Phnom Penh's kitchen where Salay was watching a movie on her laptop computer. Tran asked Salay if she had made any money that day and further asked her to teach him to cook. Salay refused and Tran then asked her if she remembered him. Although Salay did not initially recognize Tran, his question triggered her recollection of him. Tran had previously sought employment with Phnom Penh and was shown around another Phnom Penh restaurant on West 25th Street for approximately one hour by Salay's husband, Mono Bunn, but was not hired.

{¶3} After Salay refused to teach Tran, Roath Bun came into the kitchen with a customer ticket and Salay began to cook. While doing so, Salay saw Tran sitting in her chair with his shoulder bobbing up and down. Salay had left her purse underneath nearby shelving. Salay ran over and saw that her purse in which she had in excess of $1,000 was now laying on the edge and open instead of closed as she had left it. Tran

stood and moved to leave but Salay grabbed his pocket. Tran reached into a different pocket and threw out a large amount of money. Although she did not see Tran take the money out of her purse, she later discovered that the money was missing from her purse.

{¶4} After Tran threw the money away, a struggle ensued. Salay grabbed Tran and yelled for Roath to help her. Roath entered the kitchen and joined Salay in grappling with Tran. During the struggle, Tran's elbow smashed Roath's hand against the wall, causing two bones in Roath's hand to fracture. Roath ran for help from an adjoining tattoo parlor while Salay continued to struggle with Tran.

{¶5} Tran broke free of Salay and fled from Phnom Penh but was pursued by workers from the neighboring tattoo parlor. The tattoo workers confronted Tran who stated "I didn't rob him." The workers made sure Tran did not leave the area until police arrived and he then was taken into custody.

{¶6} Tran was indicted on one count of aggravated robbery that included a repeat violent offender specification and notice of prior conviction. He proceeded to a jury trial on April 9, 2013. A jury returned a verdict of guilty on April 15, 2013. At sentencing, the trial court imposed an 11-year prison term on the aggravated robbery charge and an 8-year prison term on the repeat violent offender specification to be served prior to and consecutive with the sentence on the underlying charge. Tran's cumulative prison term was 19 years. Tran now appeals and assigns five errors for our review.

{¶7} Tran's first assignment of error states:

The trial court erred in failing to sanction the state for failing to timely provide appellant with discovery essential to appellant's case.

{¶8} Tran argues that the trial court erred in failing to sanction the state for failing to timely provide discovery essential to the appellant's case until the middle of trial. While we agree that the record reflects that the state failed to strictly comply with Crim.R. 16, we find no abuse of discretion in the trial court's resolution of the matter.

{¶9} The overall objective of the criminal rules "is to remove the element of gamesmanship from a trial." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). The purpose of the discovery rules "is to prevent surprise and the secreting of evidence favorable to one party." *Id.* Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶10} We apply a three-prong test governing a trial court's exercise of discretion in imposing a sanction for the prosecution's discovery violation (1) whether the failure to disclose was a willful violation of Crim.R. 16; (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense; and (3) whether the accused was prejudiced. *State v. Keenan*, 8th Dist. Cuyahoga No. 99025, 2013-Ohio-4029, ¶ 24, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), at syllabus.

**{¶11}** In *Darmond*, the Ohio Supreme Court held that when facing a prosecutorial discovery violation, a trial court must inquire into the circumstances, balance the competing interests and "impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Darmond* at ¶ 21.

**{¶12}** In the case sub judice, Tran moved for a mistrial after receiving written statements not previously provided during the course of trial, including the statements of Salay, who had already testified. The state also provided a supplemental report that dealt with an interview of Mono Bun and a photo lineup he was shown. Tran concedes he was not prejudiced by the witness statements that contained no inconsistent statements with Salay's testimony. However, Tran asserted that he would have filed a motion to suppress to see how much influence, if any, Mono Bun had upon his wife, Salay, in regard to her identification of him as the robber.

**{¶13}** We find no prejudice in this instance. The lineup at issue was not introduced at trial and Mono Bun did not testify as a witness. The state explained that the lineup was presented to Mono Bun during the investigation of Tran's claim that he was employed by Mono Bun and was owed wages. Mono Bun was not asked to identify the person who robbed the North Olmsted Phnom Pehn restaurant because he was not a witness to the events.

**{¶14}** In regard to Tran's argument that Mono Bun may have influenced Salay's identification of Tran, the trial court allowed the parties to voir dire Salay outside the hearing of the jury to examine this issue. Salay testified that she recalled Tran from a

previous encounter when he came looking for a job after he jogged her memory by asking if she remembered him. Salay testified that she remembered Tran without talking to her husband because she had encountered him twice: when he was initially looking for work and when he entered the kitchen to speak with her on August 23, 2012. The trial court held that her identification testimony was not contaminated, tainted or influenced by any conversation with her husband.

{¶15} Finally, and most important, the question of identity was not disputed at trial. Tran himself testified and placed himself in the kitchen with Salay and identified himself as the man with whom Salay and Roath physically struggled. The primary difference between Tran's account of the events and that of Roath and Salay was that Tran denied attempting to steal Salay's money. Tran asserted that the physical confrontation began after he grew angry with Salay for refusing to pay him wages that he claimed Phnom Penh owed him and he slammed his fist on a table causing damage to Salay's laptop.

{¶16} We find no prejudice in this instance and cannot say that the trial court abused its discretion in handling Tran's Crim.R. 16 objection with a voir dire examination.[1]

---

[1]We do note our concern with the photo lineup in this case. The lineup was not entered into evidence and is not part of our record on appeal. However, the description of the lineup in the trial transcript is troubling to say the least. The trial court opined that "the police could have done a better job with the lineup." Indeed, the record describes the lineup as containing one Asian male (Tran) and five Caucasians. Although the lineup was not introduced at trial or used to identify Tran as the offender, we note that we find its description highly disturbing.

**{¶17}** Tran's first assignment of error is overruled.

**{¶18}** We address Tran's second and third assignments of error together because they pertain to overlapping questions of law. The errors state:

> The trial court erred in permitting the state to introduce evidence of other acts pursuant to [Evid.R.] 404(B) without providing appellant with proper notice.

> The trial court erred in permitting the state to discuss details of appellant's other acts pursuant to [Evid.R.] 404(B).

**{¶19}** Tran testified at trial and on direct examination he admitted that he had a prior robbery conviction and two prior breaking and entering convictions. The state cross-examined Tran regarding these convictions and asked Tran if he had previously worked at "Frankie's Wok." Tran admitted that he had. Over Tran's objection, the state then asked if one of Tran's prior breaking and entering convictions involved Frankie's Wok. Tran initially could not recall but later admitted that he had a conviction relating to Frankie's Wok. The state continued to question Tran regarding his past convictions and when he could not match the offenses to the case numbers, the state asked him if he remembered the associated victim names, specifically, a robbery of a China One restaurant and a breaking and entering of a South China Wok restaurant. The state also introduced the names of other victims of Tran's prior convictions, including an Asian Feast restaurant, a Speed Wok restaurant and a Nam Wah restaurant. Aside from the offenses and victim names, no further details of Tran's past convictions were elicited.

**{¶20}** Tran argues that the state failed to provide him with proper notice of its intent to introduce the above evidence. Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶21}** The state argues that it did not, in fact, introduce any Evid.R. 404(B) evidence. We disagree. Evid.R. 609(A) provides in relevant part:

For the purpose of attacking the credibility of a witness:

\* \* \*

(2) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**{¶22}** Evid.R. 609(A) permitted the state to attack Tran's credibility as a witness with the fact that he had previously been convicted of robbery and breaking and entering. However, the introduction of factual details pertaining to such convictions, such as the name of the victim and whether Tran had been previously employed by his victims, implicates Evid.R. 404(B). As such, the notice requirement in Evid.R. 404(B) is applicable.

**{¶23}** The rule requires only reasonable notice in advance of trial of the general nature of the 404(B) evidence intended to be introduced. The long- standing federal version of the Evid.R. 404 notice requirement also requires "reasonable notice." Federal

courts have held that the government's notice must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature. *United States v. Barnes*, 49 F.3d 1144, 1148-1149 (6th Cir.1995), citing *United States v. Birch*, 39 F.3d 1089, 1093-1094 (10th Cir.1994); *United States v. Jackson*, 850 F.Supp. 1481, 1493 (D.Kan.1994). Moreover, the notice given to the defense regarding "other crimes" evidence must be sufficiently clear so as "to permit pretrial resolution of the issue of its admissibility." *United States v. Long*, 814 F.Supp. 72, 74 (D.Kan.1993).

{¶24} In this instance the state, in response to a request for discovery by Tran, reported that it provided defense counsel with copies or photographs or would permit the inspection of 404(B) evidence. Specifically, the response indicated that the state delivered to defense counsel the defendant's criminal history and record. Furthermore, the indictment references Tran's prior conviction for robbery in Cuyahoga C.P. No. CR-05-462178-A as the basis for the repeat violent offender specification and notice of prior conviction. The indictment gives notice of the state's intention to use a certified copy of the prior conviction as proof of the conviction. Although this notice is arguably thin, the record reflects that Tran failed to make any effort to ascertain further details in light of the state's Evid.R. 404(B) notice of its intent to introduce his criminal history and record. Tran did not file a motion in limine or move for the trial court to conduct a pretrial hearing regarding the admissibility of the evidence.

{¶25} We turn next to Tran's argument regarding the Evid.R. 404(B) evidence that the state did introduce, specifically, his prior employment with Frankie's Wok and the

associated conviction, as well as the names of other restaurants that were victims in his prior offenses. Generally, "evidence that an accused committed a crime other than the one for that he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15, citing *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).

{¶26} In *Williams*, the Ohio Supreme court set forth the applicable law regarding the use of details of past criminal convictions:

> Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B) — to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident — and in considering other acts evidence, trial courts should conduct a three-step analysis.
>
> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*See* Evid.R. 403.

{¶27} As addressed above, there was no dispute regarding identity in this case pursuant to Tran's own testimony. The sole factual dispute was what occurred in the kitchen of Phnom Penh and whether the physical altercation arose as a result of Tran stealing from Salay's purse as testified to by Salay and Roath or from Tran damaging

Salay's computer as testified to by Tran. The details of Tran's past criminal transgressions have no discernable impact on this credibility determination. Further, the state failed to establish that Tran was employed by either of the Phnom Penh restaurants so the justification that it offered to the trial court for attempting to introduce further details of Tran's prior convictions, that "[h]e applied for a job, he quit and went back and stole from that restaurant, similar to this case" is without merit. In fact, the state called a rebuttal witness solely for the purpose of introducing testimony that Tran had never been employed by Phnom Penh.

{¶28} We find little, if any, argument that the subject testimony was elicited for a legitimate purpose such as demonstrating a plan or intent on the part of Tran. Indeed the prosecutor did not make an effort to establish that Tran had ever been employed by any of the other restaurants named as victims in his past convictions. There is no evidence demonstrating a unique behavioral footprint regarding the manner in which Tran committed his prior crimes nor any explanation of how that footprint was on display in this instance. The state offered no evidence that Tran had an established plan or system of brazenly walking into restaurant kitchens, speaking with employees and absconding with stolen funds. The sole implication that one could derive from the testimony was the very broad conclusion that Tran had previously been convicted of robbery and breaking and entering charges connected with Asian restaurants and that he acted in

conformity with such bad character in this instance.[2]   This testimony offers no probative value and was substantially outweighed by the danger of unfair prejudice.

{¶29} Even though we have determined that it was error for the trial court to allow in testimony regarding the details of Tran's prior convictions, error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial.   *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 40, citing *State v. Boczar*, 11th Dist. Ashtabula No. 2007-A-0034, 2008-Ohio-834, ¶ 50; *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

{¶30} In order to determine whether the admission of testimony on the prior convictions is prejudicial, an appellate court must review that evidence in light of the totality of other evidence properly introduced by the prosecution at trial.   *Chambers* at ¶ 41.   The admission of the testimony regarding past convictions will be deemed harmless error if there is overwhelming evidence of guilt.   *Id.*; *see also State v. Walker*, 8th Dist. Cuyahoga No. 94875, 2011-Ohio-1556, ¶ 38.   A review of the entire record in this case demonstrates that the error was harmless.

{¶31} This case turned on the credibility of the witnesses, namely Salay, Roath and Tran himself.   As previously discussed, Tran admitted to entering Phnom Penh's kitchen and speaking with Salay but he denied taking any money.   Salay testified in detail regarding Tran's actions in covertly removing money from her purse and scattering the

---

[2] We note that no limiting instruction was provided by the court in regard to this testimony.

money on the floor of the kitchen when confronted. Roath's testimony similarly described seeing money fall from Tran's pocket to the floor of the kitchen as he struggled with Salay. When confronted by one of the men from the tattoo parlor, Tran stated "I didn't rob him." Tran claimed Phnom Penh owed him money and told the tattoo worker, "that's why I took it." Roath testified that he instructed his mother to pick up the money while he pursued Tran. Later, the police detective who responded to Phnom Penh testified that he observed money "all thrown in [Salay's] purse" as well as "a dollar bill or two on the floor" of the kitchen. Tran's version of the events cannot be reconciled with the significant testimony of the other witnesses. In light of the overwhelming evidence of guilt, we find that the improperly admitted Evid.R. 404(B) evidence was harmless error.

{¶32} Tran's second and third assignments of error are overruled.

{¶33} Tran's fourth assignment of error states:

The trial court erred in failing to find that the photo lineup was improperly conducted and overly suggestive and prejudicial to appellant.

{¶34} Tran argues that the photo lineup was improperly conducted and overly suggestive and prejudicial to him. Specifically, Tran argues that the photo lineup was not administered by a blind administrator in accordance with R.C. 2933.83(B) and that it was extremely prejudicial because the appellant was in a six-person lineup with five Caucasian males.

{¶35} As noted above, the photo lineup was not introduced into evidence, was not preserved in the record for this court to review and the witness to whom the lineup was

shown did not witness the crime and did not testify. Furthermore, as addressed in Tran's first and third assignments of error, Tran's identity in this case was not disputed per his own testimony. Although we are disturbed by the description of contents of the lineup, its purpose was not to identify Tran as the perpetrator of this crime but to investigate his assertion that he was employed by Mono Bun and was owed wages. Contrary to Tran's argument, there is no indication the lineup had any effect on the trial, prejudicial or otherwise.

{¶36} Tran's fourth assignment of error is overruled.

{¶37} Tran's fifth assignment of error states:

Appellant's conviction for aggravated robbery was against the manifest weight of the evidence and is contrary to law.

{¶38} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶39}** In light of the evidence presented at trial, analyzed in detail above, we cannot say that the finder of fact clearly lost its way in finding appellant guilty of the above offense.

**{¶40}** Tran's fifth assignment of error is overruled.

**{¶41}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR