[Cite as *State v. Burton*, 2014-Ohio-4207.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100716**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLARENCE BURTON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-572302-A

**BEFORE:** Stewart, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** September 25, 2014

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, 2d Floor
Cleveland, OH    44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Glen Ramdhan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

**{¶1}** Defendant-appellant Clarence Burton was charged with counts of rape, attempted rape, kidnapping, felonious assault, and domestic violence. Prior to trial, he rejected a plea deal that would have had him plead guilty to kidnapping, domestic violence, and felonious assault, but sentenced only on the felonious assault count. A jury found him guilty of rape (resulting in a tier III reporting requirement), domestic violence, and assault (as a lesser included offense of felonious assault). Prior to sentencing, Burton complained that defense counsel did not bring to his attention certain evidence that was highly inculpatory — evidence that he claimed would have caused him to accept the plea deal offered by the state and not go to trial. Defense counsel told the court that Burton not only saw "the vast majority of the evidence," but that he and Burton discussed the evidence. The court denied the motion for a new trial. On appeal, Burton argues that defense counsel was ineffective and that the court erred by refusing to order a new trial.

I

**{¶2}** Burton's first assignment of error complains of three instances in which defense counsel was ineffective: (1) failing to inform Burton about inculpatory evidence, the existence of which would have caused Burton to accept a plea bargain offered by the state; (2) engaging in a trial strategy where Burton admitted to some

charged acts and stipulated to damaging evidence; and (3) failing to explore other possible defenses to the charges.

A

{¶3} An ineffective assistance of counsel claim will lie only when it is shown that both the performance of defense counsel was seriously flawed and deficient, and the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of ineffective assistance of counsel occurring during plea bargaining, a defendant who did not accept a plea offer must show not only that counsel rendered flawed and deficient representation, but that there is a reasonable probability that: (1) the defendant would have accepted the plea offer; (2) the offer would not have been withdrawn and would have been accepted by the court; and (3) the end result would have been more favorable to the defendant. *See Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012).

1

{¶4} The evidentiary basis for Burton's claim that defense counsel failed to inform him of inculpatory evidence is slim. With regard to some of the evidence the state had against him, Burton told the court, "I never heard voicemails. I never saw certain pictures. When the trial started, I seen [sic] them, so I couldn't address them." Tr. 604.

{¶5} The voicemail messages were sent by Burton to the victim of his crimes. The victim and Burton were formerly involved. Despite terminating that aspect of their

relationship, Burton refused to vacate the premises and slept in the den.  On the night of the incident relative to this case, the victim testified that she had returned from a party and was undressing in her bedroom when Burton, enraged that she had been socializing with other men, struck and raped her.  He left the bedroom, but returned moments later and repeatedly butted her head to head for two hours.  When he allowed her to leave the room to get a drink of water, she fled the house.

{¶6} A few hours after these events, Burton left a series of voicemail messages on the victim's cell phone.   In one of those messages, Burton said:

> You know I didn't mean that s**t, babe.  You know I didn't mean it.  I was mad as f**k.  That's all.  Another n****r who ain't love you aint' gonna f**k with you.  How can you blame me for being mad?  * * *  I just wanted you, man, and you just ignored me.  You just ignored me, man.  That s**t hurt.

State Exhibit 202.

{¶7} It would be an understatement to say that this voicemail was highly incriminating — a trier of fact could have found the statements to be an admission of the victim's allegations.  Burton claimed that he "never heard the voicemails," but defense counsel contradicted that assertion by telling the court that he showed Burton the "vast majority of the evidence" prior to trial.  The court had no reason to doubt defense counsel.  At best, it was Burton's word against that of defense counsel.  In any event, Burton cannot deny that he was the one who left the voicemail.  Having done so, the court could reasonably conclude that no one would have known more accurately than Burton what the voicemail contained.  Burton makes much of defense counsel's

concession that there may have been "certain aspects of the evidence that were not shown to [Burton] prior to trial," but the record does not show exactly what evidence was not shown to Burton, so that claim is unreviewable on direct appeal. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. As it stands, the record does not show that defense counsel violated any duty to inform Burton of the existence of voicemails that Burton left for the victim.

2

{¶8} Burton told the court that he "never saw certain pictures." He did not say what pictures he did not see, what the pictures showed, and how he was harmed by not seeing the pictures. On this basis alone we can find that he did not prove that defense counsel was deficient. *See* App.R. 12(A)(2); *State v. Johnson*, 8th Dist. Cuyahoga No. 96064, 2011-Ohio-4954, ¶ 3.

{¶9} Presumably, Burton's argument is premised on pictures of the victim depicting the injuries she sustained following the assault. Those photographs showed the presence of several abrasions on the victim's skin, bruising, and puffy eyes. The state maintained that the photographs documented the victim's claim that she had been physically assaulted.

{¶10} Although defense counsel conceded in opening statement that there had been a physical encounter between Burton and the victim, he tried to minimize the results of that encounter in an effort to have the jury find that Burton's acts did not rise to the level of serious physical harm required to prove a charge of felonious assault. To do so,

he referenced the photographs of the victim and argued that they depicted injuries that were "in the nature of scrapes and bruises." Most of the photographs tended to support defense counsel's strategy of downplaying the felonious assault count.

{¶11} Defense counsel told the court that while Burton may not have seen all of the photographs, he did see "many" photographs. The photographs tended to be duplicative and none were, standing alone, proof positive of serious physical harm. In addition, Burton offers no argument as to why these photographs were so compelling that his prior knowledge of them would have convinced him that it would be futile to test his innocence at trial. He has offered nothing more than conclusions that fail to sustain his burden of proving that defense counsel violated an essential duty to him.

B

{¶12} Burton next argues that trial counsel was ineffective by failing to communicate the trial strategy and failing to insist that Burton take the plea bargain offered by the state.

{¶13} We can easily reject any assertion that defense counsel was ineffective for failing to advise Burton to take the plea bargain or to insist that he do so. In addition to the plea bargain that the state formally offered, defense counsel noted on the record prior to trial that he had discussions of an informal nature with the state regarding a potential resolution of the charges. Defense counsel stated that "the nature of those conversations were conveyed to my client" and that "[m]y client has indicated to me that he was neither

interested in the formal offer currently enunciated by [the state], nor was he interested in the other things that were discussed informally in the days leading up to trial." Tr. 20.

{¶14} As for defense counsel's alleged failure to communicate his trial strategy to Burton, there is no evidence in the record to prove or disprove Burton's assertion. It is unresolvable on direct appeal because it requires evidence outside the record. *State v. Rivas*, 8th Dist. Cuyahoga No. 100044, 2014-Ohio-833, ¶ 10.

C

{¶15} Finally, Burton argues that defense counsel was ineffective for conceding in opening statement that a sex act occurred and that there was a "physical encounter" between Burton and the victim. He contends that by admitting there had been a physical encounter between Burton and the victim, defense counsel essentially conceded the force element of rape. Burton maintains that had he known this was going to be defense counsel's strategy, he would have pleaded guilty.

{¶16} Burton misconstrues defense counsel's opening statement. It is true that defense counsel told the jury that "you are not going to hear us dispute there was a sex act." That concession was dictated by vaginal swabs of the victim's vagina that confirmed the presence of semen. However, defense counsel went on to tell the jury that "we dispute that it was rape." Defense counsel referenced the "rocky relationship" between Burton and the victim and said that the physical encounter occurred "*after the fact*" and that "my client disputes the [rape allegation]. He's not guilty of committing a sexual assault here."

{¶17} Beyond Burton's misapprehension of what defense counsel told the jury in opening statement, the fact remains that complaints about trial strategy will not ordinarily suffice to make out a claim of ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980); *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 116. Defense counsel was hamstrung by Burton's insistence on going to trial in the face of very strong evidence of guilt. It was not unreasonable for defense counsel to concede that which was beyond debate (that the victim was assaulted) and focus on defending those counts which were subject to debate (whether a rape occurred and whether the assault rose to the level of felonious assault). We thus conclude that defense counsel's trial strategy did not rise to the level of ineffective assistance of counsel.

II

{¶18} In his second assignment of error, Burton complains that the court erred by denying his motion for a new trial. He maintains that defense counsel's failure to show him all of the evidence constituted "accident or surprise" for purposes of Crim.R. 33(A)(3).

{¶19} It is a basic proposition of appellate review that "[a] court of appeals cannot consider [an] issue for the first time without the trial court having had an opportunity to address the issue." *State v. Peagler*, 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996). In his motion for a new trial, Burton argued only that "the verdict is contrary to the weight of the evidence and came as a direct result of the Howard Charge being administered."

He made no claim that he was entitled to a new trial on the basis of not being made aware of inculpatory evidence that would have persuaded him to plead guilty.

{¶20} In any event, Burton's motion for a new trial did not raise a viable ground for accident or surprise that could not have been prevented by ordinary prudence. Defense counsel told the court that Burton had seen the "vast majority" of the evidence prior to trial. As we have noted, much of this evidence was in the form of messages that Burton sent to the victim. He cannot claim to have been surprised that the state would use such evidence against him, particularly when it was so incriminating. The assigned errors are overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

LARRY A. JONES, SR., P.J., and

KENNETH A. ROCCO, J., CONCUR