[Cite as *State v. Weakley*, 2017-Ohio-8404.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
## No. 105293

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAMONT WEAKLEY

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600835-A

**BEFORE:** E.A. Gallagher, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** November 2, 2017

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Chief Public Defender
BY: Cullen Sweeney
        Noelle A. Powell
Assistant Public Defenders
301 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: James D. May
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant Lamont Weakley appeals his convictions after a jury found him guilty of 20 counts arising out of a scheme to use personal information stolen from patients of American Dental Centers to obtain fraudulent lines of credit and make purchases at various retail stores (the "fraudulent credit scheme"). Weakley contends that his convictions should be vacated and a plea agreement enforced because he was denied the effective assistance of counsel during plea negotiations and at trial. He also contends that the trial court erred in denying his motions for a mistrial and a new trial after a witness testified regarding his prior incarceration during her direct examination and a document, which was not admitted into evidence, referencing his probation for a federal offense was included with the exhibits given to the jury during their deliberations. Finally, Weakley contends that the jury's verdict of forfeiture was not supported by sufficient evidence. For the reasons that follow, we reverse the trial court's judgment, vacate Weakley's convictions and remand for further proceedings.

**Factual and Procedural Background**

**{¶2}** On December 1, 2015, a Cuyahoga County Grand Jury indicted Weakley on 34 counts of a 45-count indictment for his role in the fraudulent credit scheme as follows:

- one count of engaging in a pattern of corrupt activity (Count 1);

- two counts of conspiracy (Counts 2 and 3);

- 13 counts of identity fraud (Counts 4, 5, 13, 19, 21, 23, 25, 29, 31, 35, 39, 41 and 43);

- two counts of receiving stolen property (Counts 7 and 8);

- one count of having a weapon while under disability (Count 9);

- two counts of telecommunications fraud (Counts 10 and 11);

- one count of aggravated theft (Count 12);

- seven counts of grand theft (Count 14, 20, 24, 26, 32, 40 and 42);

- two counts of theft (Count 22 and 36);

- one count of petty theft (Count 30);

- one count of money laundering (Count 44) and

- one count of possessing criminal tools (Count 45).

A number of the counts included a forfeiture of weapon specification, a forfeiture of property specification and a one-year firearm specification. Two codefendants — Melissa Coles and Dewayne McDaniel — were also indicted in connection with the fraudulent credit scheme.

{¶3} Patrece Wheatley, with whom Weakley had a long-term, "off and on" relationship, was Weakley's alleged source of the personal information used in the fraudulent credit scheme. Wheatley admitted stealing patient information she was entrusted to handle as a financial advisor for American Dental Centers including names, addresses, dates of birth and social security numbers and giving that information to Weakley at his request. Weakley, along with his two codefendants, allegedly used that information to create fake driver's licenses and identification cards in the names of the alleged victims, establish lines of credit in the names of the alleged victims and make

various purchases, including purchases of jewelry, clothing, gift cards and cell phones using the credit that had been established.

{¶4} In October 2015, police arrested Weakley for his role in the scheme. After his arrest, Wheatley contacted the Richmond Heights police about picking up Weakley's personal belongings. When Wheatley arrived at the police station to collect Weakley's belongings, she was questioned by the police. During questioning, Wheatley disclosed that she had previously retrieved two bags of Weakley's belongings from a house on Coit Road in Cleveland and that she had those bags in her garage. Police detectives drove Wheatley home and she gave them the bags of Weakley's belongings. Among the items inside the bags were folders containing the patient information Wheatley had allegedly given to Weakley, driver's licenses and identification cards for several of the victims with Weakley's or Cole's photographs, jewelry, receipts in other people's names and a loaded firearm. The fraudulent credit scheme allegedly involved 16 victims and $253,806 in credit was allegedly obtained through the scheme.

{¶5} After plea negotiations fell apart, the state dismissed counts 7, 10, 11 and 44, and the case proceeded to a jury trial on the remaining 30 counts. Defense counsel did not request bifurcation of any of the counts prior to trial.

{¶6} At trial, the state presented testimony from ten witnesses including Wheatley, codefendant Coles, two Richmond Heights police detectives who investigated the fraudulent credit scheme, a forensic scientist from the Ohio Bureau of Criminal Investigation who testified regarding the presence of Weakley's DNA on the firearm

found in one of the bags Wheatley turned over to police and five of the alleged victims. The state also presented numerous exhibits including fake driver's licenses and identification cards, credit account information, temporary retail credit cards and shopping passes, receipts, photographs of the alleged perpetrators and various items purchased using the fraudulently obtained credit, including gift cards, cell phones and jewelry.

**Patrece Wheatley's Testimony Regarding Weakley's Incarceration**

{¶7} Wheatley was the state's first witness. A few minutes into her direct examination, the state inquired whether Weakley had ever asked her for money. In response, Wheatley testified as follows:

Q. Okay. Did he ever ask you for money?

A. Yes.

Q. He did?

A. Yes.

Q. What kind of money?

A. Just $100 here and there.

Q. $100 here and there?

A. Mm–hmm.

Q. Did it become a regular kind of thing?

A. Only when he was incarcerated.

{¶8} Because of the reference to Weakley's prior incarceration, defense counsel moved for a mistrial. He argued that Wheatley's testimony was prejudicial, notwithstanding his prior stipulation that Weakley had been convicted of a felony, because it suggested that there were multiple times in which Weakley was incarcerated.

{¶9} The trial court rejected Weakley's interpretation of Wheatley's testimony and denied the motion for a mistrial, concluding that the error was harmless because the jury already knew Weakley had a prior felony conviction:

> THE COURT: Okay, go ahead and be seated. Okay, we came to side bar because the witness mentioned quote, "Only when he was incarcerated." So my suspicion is when we came to side bar and [defense counsel] said he wanted to make a motion he wanted to have a motion for a mistrial right?
>
> [DEFENSE COUNSEL]: Yes, your honor.
>
> THE COURT: Okay, so the court is not going to give a mistrial motion [sic]. In opening statement it was explained that Mr. Weakley had been charged with this offense, and so it wouldn't be beyond the stretch that he was at some time arrested for this case. And there has been evidence that at some unknown point in time he was convicted of a felony; and therefore those would be two plausible explanations for the gentleman being incarcerated. Okay? Now, so — so on that ground alone the court is not granting any mistrials.

{¶10} As the trial progressed, the parties agreed to streamline the presentation of the evidence and entered into the following stipulation:

> The parties stipulate and agree to each and every part of the criminal charge in Count 4. The same stipulation applies to Counts 5, 12, 13, 14, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 35, 36, 39, 40, 41, 42 and 43 except defendant Lamont Weakley's involvement in the commission of the criminal offense. The state is still required to prove his involvement in this criminal offense and his involvement in the criminal offenses of these other

counts.   The defendant still denies his involvement in   each of the criminal offenses.

A written copy of the stipulation and a chart of the offenses were provided to the jury.

{¶11}   After the state rested, Weakley moved for a judgment of acquittal on Counts 1, 2, 3, 4, 8, 9 and 43.   The trial court denied the motion.   Weakley presented testimony from one witness, the person responsible for managing the Coit Road property, who testified that he had never seen Weakley at the property.   Weakley then renewed his Crim.R. 29 motion.   Once again, the trial court denied the motion and the case went to the jury.

**The Jury's Verdict**

{¶12} On November 2, 2016, the jury returned its verdicts, finding Weakley guilty of 20 counts: one count of engaging in a pattern of corrupt activity (Count 1); two counts of conspiracy (Counts 2 and 3); two counts of aggregate identity fraud charges (Counts 4 and 5); one count of having a weapon while under disability (Count 9); one count of aggravated theft (Count 12); individual fraud and theft charges related to six victims (Counts 13, 14, 23, 24, 29-32, 35, 36, 39 and 40), one count of possession of criminal tools (Count 45), and the associated weapon forfeiture, property forfeiture and one-year firearm specifications.   The jury found Weakley not guilty of the receiving stolen property charge related to the firearm (Count 8) and the individual identity fraud and theft charges related to several other alleged victims (Counts 19, 20, 21, 22, 25, 26, 41-43).

**Unadmitted Document Provided to Jury During Deliberations**

**{¶13}** After the jury returned its guilty verdicts, the prosecutor discovered a document, which had not been admitted into evidence, at the bottom of the box of exhibits that had been provided to the jury for its deliberations. The document, dated November 10, 2015, was a fax cover sheet from "Det. Duffy" of the Richmond Heights Police Department to the "US Probation Office" "re Lamont Weakley." A box that stated "[f]or [r]eview" was checked and "stolen gun recovered" was handwritten in the "comments" section.

**{¶14}** The prosecutor set up a conference with the trial court and defense counsel and advised them of his finding. The prosecutor indicated that he had intentionally removed the fax cover sheet from the back of a set of documents that included several trial exhibits because it referenced the "US Probation Office." He stated that, after he removed the page from the group of exhibits, he "twist-crumpled" it and instructed one of the detectives to "[m]ake sure this does not get into the evidence," "[m]ake sure I don't put this in evidence." The prosecutor stated that he had no idea how the "crumpled" document got into the box of exhibits that went back with the jury.

**{¶15}** Following the prosecutor's disclosure, Weakley filed a motion for new trial. He contended that the fax cover sheet was prejudicial because it showed Weakley had a prior federal conviction and argued that the jury would perceive a federal offense as being "far more serious" than a state offense. He further argued that the cumulative prejudicial effect of this document being provided to the jury along with Wheatley's testimony regarding Weakley's prior incarceration warranted a new trial. The state argued that

Weakley could not show that he had been prejudiced by the submission of the unadmitted fax cover sheet to the jury.

{¶16} After holding an evidentiary hearing on the motion, the trial court denied Weakley's motion for a new trial. Even assuming the jury had seen the fax cover sheet, the trial court found that it was not prejudicial because the jury already knew that Weakley had a prior felony conviction and that "it would not have affected their decision in light of the mountain of other evidence that they were given."

{¶17} At sentencing, the trial court merged the two conspiracy counts (Counts 2 and 3) into Count 1 (engaging in a pattern of corrupt activity). The trial court also merged the two aggregate identity fraud counts (Counts 4 and 5) and all of the individual identity fraud counts (Counts 13, 23, 29, 31, 35 and 39) into the aggregate identity fraud count (Count 4) and merged all of the individual theft counts (Counts 14, 24, 30, 32, 36 and 40) into the aggregate theft count (Count 12). The trial court sentenced Weakley to an aggregate prison sentence of 15 years, 9 months on five counts as follows: 11 years on Count 1, 8 years plus the one-year firearm specification on Count 4, nine months on Count 9, three years on Count 12 and one year on Count 45. The trial court ordered that the mandatory one-year sentence on the firearm specification in Count 4 be served prior to and consecutive to the sentences on all of the other counts, that the 11-year sentence on Count 1 be served consecutively to the nine-month sentence on Count 9 and the three-year sentence on Count 12 and that the sentences on the base offense in Count 4 and

on Count 45 be served concurrently to each other and to sentences on Count 1, Count 9 and Count 12.

{¶18} Weakley appealed his convictions, raising the following six assignments of error for review:

> ASSIGNMENT OF ERROR NO. I:
> Lamont Weakley was denied his right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution during the pre-trial proceedings.

> ASSIGNMENT OF ERROR NO. II:
> Lamont Weakley was denied his right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his trial counsel failed to bifurcate his having a weapon while under disability charge.

> ASSIGNMENT OF ERROR NO. III:
> The trial court erred in denying Mr. Weakley's motion for a mistrial after a witness improperly referenced Mr. Weakley's prior incarcerations.

> ASSIGNMENT OF ERROR NO. IV:
> The trial court abused its discretion in denying Mr. Weakley's motion for a new trial, which was based on inadmissible, prejudicial material being included with the exhibits given to the jury and the jury hearing a witness' prejudicial statement.

> ASSIGNMENT OF ERROR NO. V:
> Defendant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his counsel failed to present necessary evidence in support of his motion for a mistrial and his motion for a new trial and failed to object to inadmissible evidence.

> ASSIGNMENT OF ERROR NO. VI:
> The jury's verdict of forfeiture was not supported by legally sufficient evidence.

**Law and Analysis**

**Ineffective Assistance of Counsel**

**{¶19}** In his first and second assignments of error, Weakley argues that his trial counsel provided constitutionally ineffective assistance of counsel.

**{¶20}** A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland* at 687-688; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**Plea Negotiations**

**{¶21}** In his first assignment of error, Weakley contends that his counsel provided ineffective assistance of counsel during the plea negotiations, "derailing" Weakley's attempt to accept a favorable plea offer. He contends that trial counsel was deficient in failing to correct a misstatement of law by the prosecutor regarding Weakley's eligibility for judicial release leading to the rejection of a plea deal and the imposition of a much longer sentence than Weakley would have received under the plea deal.

**{¶22}** A defendant's right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Erroneous legal advice can constitute ineffective assistance of counsel if it prejudicially impacts a plea. *See, e.g., id.* at 162-166; *State v. Simpson*, 10th Dist. Franklin No. 07AP-929, 2008-Ohio-2460, ¶ 16 ("Erroneous legal advice as to eligibility for judicial release that induces a plea of guilty may constitute ineffective assistance of counsel."); *State v. Howard*, 7th Dist. Mahoning No. 12 MA 41, 2013-Ohio-1437, ¶ 21 ("erroneous advice by counsel which induces a decision by a defendant that results in prejudice to that defendant, is a ground for reversal"); *see also State v. Persons*, 4th Dist. Meigs No. 02CA6, 2003-Ohio-4213, ¶ 11-16 (defendant's guilty pleas were void where trial counsel did not correctly advise defendant as to his eligibility for judicial release, which was a material term of plea agreement, and trial court and the state's misunderstanding of defendant's eligibility for judicial release further compounded the error).

**{¶23}** To establish ineffective assistance of counsel occurring during plea negotiations, a defendant who did not accept a plea offer must show not only that counsel rendered flawed and deficient representation, but also that there is a reasonable probability that: (1) the defendant would have accepted the plea offer; (2) the offer would not have been withdrawn and would have been accepted by the court and (3) the end result would have been more favorable to the defendant. *State v. Burton*, 8th Dist.

Cuyahoga No. 100716, 2014-Ohio-4207, ¶ 3; *Lafler* at 164. Following a thorough review of the record, we conclude that Weakley has met his burden in this case.

**{¶24}** The record reflects that on the morning of trial, the trial court directed the parties to outline the history of their plea negotiations "on the record." The prosecutor explained that there had been two plea offers extended to Weakley, i.e., the "original" plea offer under which Weakley would have pled guilty to four third-degree felonies — conspiracy, identity fraud, having a weapon while under disability and aggravated theft[1] — and a "modified" plea offer, pursuant to which the state would have substituted another third-degree felony for the amended conspiracy count in the original plea offer. According to the prosecutor, at that time, the state, defense counsel and the trial court all believed that Weakley would not be eligible for judicial release if he pled guilty to conspiracy. Therefore, with its modified plea offer, the state had offered to substitute another third-degree felony for conspiracy so that Weakley could be eligible for judicial release. According to defense counsel, the state had also agreed not to object if the trial court decided to grant Weakley judicial release after six months of imprisonment.

---

[1]Specifically, under the original plea offer, the state would have amended Counts 3 (conspiracy) and 4 (identity fraud) to reduce those counts from second-degree felonies carrying sentences of two to eight years to third-degree felonies carrying sentences of 9 to 36 months and deleted the firearm specification in Count 4. Weakley would have pled guilty to the amended counts and two other third-degree felonies — Count 9 (having a weapon while under disability) and Count 12 (aggravated theft) — as well as the associated weapon forfeiture and property forfeiture specifications. All remaining counts would have been dismissed.

**{¶25}** At the time he committed the offenses at issue, Weakley was on supervised release for a prior federal offense. Based on his possession of the firearm that was found in the bag retrieved from Wheatley's garage, Weakley was sentenced to two years in prison for violating the terms of his federal supervised release.

**{¶26}** The prosecutor also recounted prior discussions the parties had had with the trial judge regarding (1) the sentence she would likely impose if Weakley accepted a plea offer and (2) the interplay between any sentence the trial court imposed in this case and the two-year sentence the federal court had already imposed for his parole violation — which was ordered to run consecutively to any sentence imposed by the trial court. Although the parties acknowledge that the trial court "did not make a firm commitment" regarding the sentence it would impose if Weakley accepted the plea offer, the prosecutor stated:

> If I may, the Court discussed and basically presented that the sentence would be four years with judicial release upon 6 months so that Mr. Weakley could go from County Jail, or Lorain, and go right to do his Federal sentence. And the goal was to keep him under 3 years at the time * * *.

Defense counsel similarly indicated that "[t]here was at least a discussion that — possibly that the Court would impose 4 years with the possibility of judicial release after 6 months."

**{¶27}** After Weakley rejected the modified plea offer several weeks before trial, it was revoked and the state reinstated the original plea offer. The prosecutor indicated, however, that the original plea offer would no longer be available "the moment a juror

steps foot into this room." The prosecutor further indicated that, at that point, that state would "still [be] open to certain negotiations, but they will start with at least one felony of the second degree."

{¶28} After the plea offers had been placed on the record, the trial judge asked Weakley whether he understood the plea offers he had previously rejected. Wheatley responded, "[n]ot really." He indicated that he was confused regarding the length of time he would serve if he "pled out" to the charges in this case, given that he had already been sentenced to two years by the federal court for the violation of his federal supervised release. The trial judge, therefore, proceeded to "break this down a little bit," and with input from the state and defense counsel, further explained the logistics of sentencing. The trial court stated that if Weakley accepted the plea offer and, "for instance," received a four-year prison sentence, he would be imprisoned for six months on his state court sentence, but could then file a motion for judicial release. She further explained that, if the motion for judicial release was granted, Weakley would go into the federal system to serve his two-year federal sentence. Upon completion of his federal sentence, he would be subject to a period of supervision by the state court. Following these clarifications, Weakley said, "Okay, I'll take the deal," and the trial judge immediately proceeded with the plea colloquy.

{¶29} The trial judge began by inquiring as to preliminary matters, including Weakley's age, education, current medications and health issues. She then advised Weakley of the effect and consequences of his guilty pleas and the constitutional rights he

would be waiving by entering his guilty pleas.  After confirming with Weakley that he understood his rights and had no questions "so far," the trial judge turned to the prosecutor and asked him to identify one of the amended counts to which Weakley would be pleading guilty under the original plea agreement:

> THE COURT:   Okay.   So how are you amending Count 3[?]
>
> [THE STATE]: I'm a little confused, your Honor, what we are exactly pleading to at this time.
>
> THE COURT: I thought you were saying that you are amending Count 3 to reduce it to a third degree felony; you were changing the language so that it wouldn't be a second degree felony but it would be a third degree felony.
>
> [THE STATE]: Yes, I was, your Honor.
>
> THE COURT: Okay.   So can you do that at this time, or does that require extra consideration?

{¶30} The state requested a sidebar conference to discuss the issue.  During the sidebar conference, the prosecutor informed the court that if Weakley were to accept the original plea offer — the only plea offer that was still available given Weakley's prior rejection of the modified plea offer — he would not be eligible for judicial release as contemplated by the trial judge when she was explaining the terms of the plea offer to Weakley.   As the trial court explained:

> THE COURT: * * * We're still in open court on the record, and the Prosecutor is now helping the Court understand that if the gentleman pleas to the plea bargain he was offered he would not be eligible for judicial release because the original plea bargain involved an amended Count 3 conspiracy.   And you could change the text to make it a third degree felony conspiracy, but conspiracy is not subject to judicial release. * * * So when you said a few minutes ago that the text could change so that he could get

judicial release on the conspiracy count * * * you're now telling me that you weren't talking about the original plea bargain offer?

[THE STATE]: No. I'm just saying we agreed to modify it; agreed. We don't agree to modify it now. * * * We agreed to modify it then to make things work. * * * The original plea, which was presented, * * * was conspiracy, identity fraud, having weapons under disability and aggravated theft; all felonies of the third degree. * * * Then the Court and [defense counsel] started discussing whether or not the defendant could get judicial release. And we all understood that if he got more than 4 years he couldn't. * * * The State said then we can make this happen if we change one of the counts to something else and we did. And then he still didn't want to take the plea, regardless of what his level of understanding was about what he would get.

THE COURT: * * * He didn't even want 6 months. * * *

[THE STATE]: Right. * * * And you gave him a week to think about it.

* * *

THE COURT: * * * [S]o the State has now reverted to its original plea bargain. It is not today willing to offer the gentleman a change to amended Count 3 that would permit judicial release. Do I have that right?

[THE STATE]: That's right. The State removed that at the same time the Court said the Court was not going to entertain any type of consideration in sentencing in advance.

THE COURT: Okay.

{¶31} The trial court asked the prosecutor to identify the specific statutory provision that he contended precluded judicial release on the conspiracy charge. R.C. 2929.20(A)(1)(b)(v), the provision identified by the prosecutor, states:

(b) "Eligible offender" does not include any person who, on or after April 7, 2009, is serving a stated prison term for any of the following criminal offenses that was a felony and was committed while the person held a public office in this state: * * *

(i)  A violation of section 2921.02, 2921.03, 2921.05, 2921.31, 2921.32, 2921.41, 2921.42, or 2923.32 of the Revised Code;

* * *

(v)  A conspiracy to commit, attempt to commit, or complicity in committing any offense listed in division (A)(1)(b)(i) or described in division (A)(1)(b)(iii) of this section[.]

The prosecutor further indicated that the statutory violation giving rise to the conspiracy charge was a conspiracy to engage in a pattern of corrupt activity under R.C. 2929.32. Defense counsel did not dispute the prosecutor's assertion that Weakley would be ineligible for judicial release if he accepted the state's original plea offer.

{¶32} Based on the prosecutor's representations, the trial court terminated the plea colloquy, summarizing the history the parties' plea negotiations as follows:

> Now, ladies and gentlemen, we have a jury.  We've gone on the record. We've stated a plea bargain which Mr. Weakley, we all admit, rejected back in August.  He was given a modified agreement.  The State of Ohio has taken that off the table.  My apologies I didn't understand that little step when I went through that, so the plea bargain available to Mr. Weakley is still there but the plea bargain would not permit any sentence involving judicial release, so we're going to get out jury and get started here.

Defense counsel did not object and the trial court provided Weakley no further opportunity to accept the original plea offer offered by the state.

{¶33} On appeal, the states concedes R.C. 2929.20(A)(1)(b)(v) did not apply to Weakley, i.e., Weakley did not hold public office in Ohio, and that Weakley could, in fact, have been eligible for judicial release had he accepted the state's original plea offer. Based on the record before us, Weakley has established the deficient performance of his trial counsel during the plea-bargaining process, satisfying the first prong of the

*Strickland* test. *See, e.g., State v. Reeves*, 2d Dist. Greene No. 2015-CA-12, 2016-Ohio-5540, ¶ 31, 36 (defense counsel's failure to object to the state's incorrect recitation of the sentence at the plea hearing and failure to attempt to secure his client's right to accept the corrected plea bargain constituted ineffective assistance of counsel).

**{¶34}** Citing the United States Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), Weakley contends that this court "must remedy [the] constitutional violation" resulting from the ineffective assistance of his trial counsel by vacating his convictions and requiring the state to reoffer the original plea offer that had been extended to Weakley prior to trial.

**{¶35}** In *Lafler*, a defendant who had been charged under Michigan law with assault with intent to murder and several other offenses received a favorable plea offer. *Id.* at 161. Under the plea offer, the state would dismiss certain of the charges and to recommend a sentence of 51 to 85 months on the remaining charges in exchange for the defendant's guilty pleas. *Id.* In a communication with the trial court, the defendant admitted his guilt and expressed a willingness to accept the plea offer. *Id.* However, after trial counsel allegedly advised him that the state could not prove intent because the victim had been shot below the waist (the defendant had allegedly pointed a gun toward the victim's head and fired, but missed, then shot her three additional times in the buttock, hip and abdomen), the defendant ultimately rejected the plea offer. *Id.* at 160-161. The case proceeded to trial. The defendant was convicted on all counts and received a

mandatory minimum sentence of 185 to 360 months in prison — more than three times the sentence under the plea offer. *Id.* at 161.

**{¶36}** In *Lafler*, the state conceded that defense counsel's performance was deficient when he advised the defendant to reject the plea offer on the ground he could not be convicted at trial; the issue was how to determine whether the defendant was prejudiced by the ineffective assistance of counsel. *Id.* at 163. The Court held that if trial counsel's deficient performance during plea negotiations caused the defendant to reject a plea offer that the trial court would have accepted and would have resulted in the defendant's conviction of less serious charges or the imposition of a lower sentence, the defendant may be prejudiced. *Id.* at 166, 174. The Court further held that where a defendant is prejudiced, the remedy under such circumstances is to order the state to reoffer the previously rejected plea offer. *Id.* at 174. As the Court explained:

> The correct remedy in these circumstances * * * is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed.

*Id*.

**{¶37}** The state disagrees. Although it concedes that the prosecutor "misstate[d] the law regarding judicial release" when he set forth the history of the parties' plea negotiations on the record, the state claims that Weakley was not prejudiced by the error — or any deficiency on the part of defense counsel in failing to point out the error —

because there was no plea offer on the table for Weakley to accept on the day of trial that included "a promise of [eligibility for] judicial release." It asserts that Weakley had previously rejected the modified plea offer, i.e., "where the trial court finally got involved and indicated that it would only sentence Appellant to four years so he could apply for judicial release in 6 months," and that the only plea offer that was still available to Weakley that he could have taken on the day of trial was the original plea offer, i.e., a guilty plea to four felonies of the third degree "without the trial court's promise of judicial release."

{¶38} In this case, there is nothing in the record that indicates that the original plea offer, which Weakley sought to accept on the morning of trial, included any explicit "promise" by the trial court that it would grant judicial release after six months or that it would impose a sentence that would make Weakley eligible for judicial release in six months. Weakley concedes this fact on appeal. Nevertheless, the fact that the original plea offer did not include an agreed sentence or a "promise" of judicial release, would not have precluded Weakley from choosing to "take the deal."

{¶39} Weakley has shown not only that his counsel rendered deficient representation but a reasonable probability (1) that he would have accepted the plea offer, (2) that his guilty pleas would have been accepted by the trial court and (3) that the end result would have been more favorable to him. After the trial judge completed her explanation of the original plea offer and how sentencing under the original plea offer would work given Weakley's sentence in the federal case, Weakley said he would "take

the deal." The state indicated that the original plea offer would remain open until a "a juror steps foot into [the courtroom]." Accordingly, the original plea offer was still available when Weakley accepted it. The trial judge was very familiar with the case and had been actively involved in the plea negotiations. Once Weakley said he would accept the original plea offer, the trial judge immediately proceeded with the plea colloquy, terminating the colloquy only when the state raised an issue regarding Weakley's eligibility for judicial release. Thus, the record supports the conclusion that the trial court would have accepted Weakley's guilty pleas.

{¶40} Further, the record is clear that Weakley has been prejudiced by his trial counsel's failure to advise that Weakley would have, in fact, been eligible for judicial release under the original plea offer, thus satisfying the second prong of the *Strickland* test. Under the terms of the original plea offer, Weakley would have pled guilty to four third-degree felonies without any firearm specifications, each carrying a maximum prison sentence of three years. After trial, Weakley was convicted (after merger) of five counts — one first-degree felony, one second-degree felony with a one-year firearm specification, two third-degree felonies and a fifth-degree felony — for which he received an aggregate prison sentence of 15 years, 9 months. Even if Weakley had received maximum consecutive sentences on all four of the third-degree felonies that were the subject of the original plea offer, he would have still received a lesser sentence than he received after trial.

{¶41} Weakley's first assignment of error is sustained.

**Weakley's Prior Criminal Record**

**{¶42}** Weakley's second, third and fourth assignments of error are interrelated and will be addressed together. In these assignments of error, Weakley challenges actions by his trial counsel and rulings by the trial court that he contends improperly and prejudicially placed his prior criminal record before the jury, exposing him to "the biases attendant to a jury learning that the accused had been previously convicted of a criminal defense."

**{¶43}** As the Ohio Supreme Court recognized in *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987):

> The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand.

*Id.* at 55.

**Counsel's Failure to Bifurcate Having a Weapon While under Disability Charge**

**{¶44}** In his second assignment of error, Weakley argues that he was denied the effective assistance of trial counsel because trial counsel failed to request that the having a weapon while under disability charge be bifurcated from the other charges and tried to the bench, unnecessarily placing the fact of his prior conviction before the jury. He

contends that, as a result of his counsel's deficient performance, the jury was "infected with irrelevant and highly prejudicial evidence" and that there is a reasonable probability the outcome would have been different had the having a weapon while under disability charge been tried to the bench and the jury prevented from learning about his prior conviction.

{¶45} When considering whether a trial counsel's representation is deficient, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Even debatable trial tactics and strategies do not generally constitute deficient performance. *State v. Phillips*, 8th Dist. Cuyahoga No. 103895, 2016-Ohio-7049, ¶ 11, citing *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶46} Decisions by trial counsel not to file certain pretrial motions, including a motion to sever charges for separate trials, are generally considered "'debatable trial tactics that * * * do not constitute a deprivation of effective counsel.'" *State v. Wilson*, 9th Dist. Summit No. 26683, 2014-Ohio-376, ¶ 56-58, quoting *State v. Griffin*, 9th Dist. Lorain No. 11CA010128, 2013-Ohio-416, ¶ 44. Likewise, a defense counsel's decision to stipulate to facts is generally considered a tactical decision. *See, e.g., State v. Hefflinger*, 6th Dist. Erie No. E-16-054, 2017-Ohio-7100, ¶ 31 ("'Generally, decisions to stipulate to facts or evidence are tactical decisions that fall within the wide range of

reasonable professional assistance.'"), quoting *State v. Mackey*, 12th Dist. Warren No. CA99-06-065, 2000 Ohio App. LEXIS 480, *14 (Feb. 14, 2000).

**{¶47}** In *State v. Jenkins*, 8th Dist. Cuyahoga No. 91100, 2009-Ohio-235, however, this court held that a defense counsel's failure to request bifurcation of the having a weapon while under disability charge contributed to a finding of ineffective assistance of counsel.[2] The court found that this failure alone would not "constitute ineffective assistance of trial counsel," but that it "add[s] to the cumulative nature of counsel's errors," because it could not "conceivably be considered a trial tactic" under the facts and circumstances of the case. *Id.* at ¶ 17; *see also State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 39-40 (although "troubled by defense counsel's decision not to request that the weapons under disability charge be bifurcated from the other charges," court refused to reverse defendant's conviction where the failure to bifurcate the having weapons while under disability charge "did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the outcome of trial would have been different had the charge been separated"); *Griffin* at ¶ 43-44 (defense counsel's failure to bifurcate having weapons while under disability charge "does not constitute per se ineffective assistance of counsel").

**{¶48}** Following a thorough review of the record, we agree with Weakley that, under the particular facts and circumstances here, trial counsel's failure to seek

---

[2] *Jenkins* involved three omissions by trial counsel: failure to file a motion to suppress; failure to file a motion for discovery and failure to bifurcate the having weapons while under disability charge. *Jenkins*, 2009-Ohio-235, at ¶ 1-18.

bifurcation of the having a weapon while under disability charge constituted deficient performance under *Strickland*.

**{¶49}** Because the having a weapon while under disability charge was not bifurcated, the state had to prove to the jury that Weakley had a criminal record. To prevent the state from presenting evidence of Weakley's prior conviction at trial, defense counsel stipulated to the fact that Weakley had a prior felony conviction that precluded him from having a firearm. The jury was advised of the parties' stipulation during the trial court's preliminary instructions before opening statements:

> THE COURT: * * * Here's a charge, Count 9. There is an accusation that Mr. Weakley knowingly acquired, had, carried or used a firearm even though he was, under Ohio law, under a disability and could not acquire, have, carry or use a firearm. And this involves actually a fact that the parties have stipulated or agreed to. He's disabled from anything to do with a firearm because he had previously been convicted of a felony; and the commission of that kind of felony disables you from being permitted to acquire, have, carry, use a firearm. So he stipulates that he was convicted of the right kind of felony for that but he does not agree that he is guilty of knowingly acquiring, having, carrying or using a firearm at the time and date where they say.
>
> Now, ladies and gentlemen, let[']s just stop and pause. So it's coming to you as a given fact that Mr. Weakley has this old felony conviction. Please understand that the law is just because there is evidence before you of having committed a prior felony, that's not evidence tending to show the individual committed one or more of these felonies.
>
> Understood?
>
> THE JURORS: Yes.

THE COURT: That felony only comes in as part of that accusation that he had a firearm when he shouldn't have because of the disability. Okay? Very critical fact.

{¶50} In this case, because trial counsel did not seek bifurcation of the having a weapon while under disability charge, the jury learned, even before any testimony was heard, that Weakley allegedly had a gun when he was prohibited from doing so because of a prior felony conviction. Weakley did not testify at trial. Thus, if the having a weapon while under disability charge had been bifurcated and tried to the bench, there is no way the jury could have properly learned of his prior conviction. Although, as the court held in *Jenkins*, this failure alone would not constitute reversible error, in this case, there was a prejudicial "snowball effect" from trial counsel's failure to seek bifurcation of the having a weapon while under disability charge and stipulation that Weakley had a prior felony conviction.

**Cumulative Error**

{¶51} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223; *see also State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶52} In this case, the effect of trial counsel's initial error in failing to seek bifurcation of the having a weapon while under disability charge was compounded as the trial progressed. Aside from the ordinary prejudice Weakley arguably sustained as a result of the jury being told that he had a prior criminal record, Weakley was also prejudiced because the trial court then used that fact, i.e., that the jury already knew that Weakley had a prior felony conviction, as justification for excusing other errors as nonprejudicial.

{¶53} A few minutes into the trial, during the testimony of the state's first witness, the jury was reminded of Weakley's criminal record when Wheatley testified that she gave Weakley money while he was "incarcerated." The state acknowledges that Wheatley should not have testified regarding Weakley's incarceration but contends that this "testimonial mishap" was not prejudicial because "it certainly is not clear whether it had any effect on the jury at all."

{¶54} That the jury attached a special significance to the evidence of Weakley's criminal past is evidenced by one of the questions the jury asked of Wheatley:

> THE COURT [asking a jury question]: Yes or No: "Did you
> know Mr. Weakley was a felon?
>
> THE WITNESS: Yes.

Further, the trial court specifically acknowledged the potentially prejudicial effect of Wheatley's testimony when admonishing Wheatley against making further references to Weakley's incarceration during her examination:

THE COURT: * * * But the way we want you to do business is certain things the state considers prejudicial. [Defense counsel], on behalf of Mr. Weakley[,] may consider them prejudicial, so I'm going along with their rules. And they tell me that they've previously instructed you not to mention the gentleman being incarcerated. We know that incarceration takes a couple of forms; you can be put in a police jail, a municipal jail, a county jail, a federal prison; whatever, but it's all incarceration and it all speaks to prior bad acts and that's what we're trying to keep away from.

{¶55} Nevertheless, the trial court denied Weakley's motion for a mistrial on the ground that the jury already knew, based on defense counsel's stipulation, that Weakley had a prior felony conviction. Although the trial court instructed the jury, with respect to the effect of the stipulation on the having a weapon while under disability charge, that "just because there is evidence before you of having committed a prior felony, that's not evidence tending to show the individual committed one or more of these felonies," no curative instruction was requested or given with respect to Wheatley's testimony.

{¶56} The trial court also excused the error associated with the submission of the unadmitted fax cover sheet to the jury as nonprejudicial and denied Weakley's motion for new trial — which was based both on Wheatley's testimony regarding Weakley's incarceration and the submission of the unadmitted fax cover sheet to the jury — on the ground that the jury already knew that Weakley had a prior conviction. At the hearing on the motion for a new trial, the prosecutor stated that he had intentionally removed the fax

cover sheet from the back of a set of trial exhibits because it referenced the "US Probation Office." He also stated that he was concerned about it getting into evidence even going so far as to ask one of the detectives to "make sure" the document did "not get into the evidence."

{¶57} Nevertheless, the trial court held that even assuming the jury had seen and reviewed the fax cover sheet, it was not prejudicial because it was "consistent with" what the jurors had already been told, i.e., that Weakley had a prior felony conviction. The trial court further held that any "new information" the document contained regarding Weakley's criminal past, e.g., that Weakley had been on probation for a federal offense or that his prior conviction was recent, was not prejudicial given the other evidence against him. As the trial court explained:

> THE COURT: * * * [T]he motion for new trial is denied. I'm willing to indulge the presumption the jury looked at the document, since otherwise why did we hold this hearing. But then we have to say if they looked at the document, was there prejudice, and the answer is no. * * * [I]f the jury looked at this, the only new information is "US probation office."
>
> Now, again, it isn't U, period, S, period, probation office. It is only "US probation office." So I find that the defendant's argument that the jury would have inferred a federal conviction is placing a lot more confidence in the knowledge of the ordinary person than I think is justified. That from that inference you could go to, oh, it's a federal conviction; therefore, it is more serious. You know, that's just building an inference on another inference.
>
> And then on top of that, the defendant would argue, oh, it's got to be a recent conviction. Well, that would again attribute to the average juror member information that I don't think they have. * * *
>
> And, of course, it would have been perfectly legitimate for the jury to make these inferences since that was consistent with what they were told. They

were told that the gentleman had, at the time he was alleged to have committed the having weapons charge, that he had this felony conviction. They weren't told it was federal, they weren't told it was recent, they weren't told it was serious, but only that it was a felony. So I don't — the Court's finding is that this is not prejudicial. To the extent the jury saw it, it would not have affected their decision in light of the mountain of other evidence that they were given. * * *

{¶58} "Inadmissible evidence about a prior crime is prejudicial, unless the reviewing court finds beyond a reasonable doubt that it did not affect the outcome." *State v. Greer*, 8th Dist. Cuyahoga No. 92910, 2010-Ohio-1418, ¶ 13, citing *State v. Williams*, 55 Ohio App.3d 212, 563 N.E.2d 346 (8th Dist.1988); *see also State v. Tran*, 8th Dist. Cuyahoga No. 100057, 2014-Ohio-1829, ¶ 29-30 (the admission of evidence regarding prior convictions will be deemed harmless error if there is overwhelming evidence of guilt); *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 40 (error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial).

{¶59} But for trial counsel's deficient performance in failing to seek bifurcation of the having a weapon while under disability charge, the trial court could not have relied on the jury's knowledge of Weakley's prior felony conviction to deny his motions for a mistrial or a new trial based on lack of prejudice.

{¶60} Although any one of these errors — the failure to request bifurcation of the having a weapon while under disability charge, the improper testimony by Wheatley regarding Weakley's prior incarceration or the improper submission of an unadmitted, potentially prejudicial document to the jury — might not, in and of itself, rise to the level

of prejudicial, reversible error, in our view, the cumulative effect of these errors deprived Weakley of his right to a fair trial. *See, e.g., State v. Dobson*, 8th Dist. Cuyahoga No. 92669, 2010-Ohio-2339, ¶ 31-47 (finding defendant was deprived of his right to a fair trial "because of the accumulated instances of his counsel's ineffectiveness," including his failure to file a motion to bifurcate the having a weapon while under disability charge). Based upon the record before us, we cannot say conclusively that the information provided to the jury regarding Weakley's prior conviction did not affect the outcome in this case. We, therefore, sustain Weakley's second, third and fourth assignments of error under the cumulative error doctrine. Based on our resolution of Weakley's first four assignments of error, his remaining assignments of error are moot.

**{¶61}** We reverse the trial court's judgment, vacate Weakley's convictions and remand the case with instructions for the trial court to order the state to reoffer its original plea offer to Weakley. If Weakley chooses not to accept the reoffered plea offer or if the trial court refuses to accept his guilty pleas, then Weakley shall be entitled to a new trial on the offenses of which he was previously convicted.

**{¶62}** Judgment reversed; case remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR