[Cite as *State v. Sayles*, 2020-Ohio-5508.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                       No. 108524

v.                                       :

ANTONIO SAYLES,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 3, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628148-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Paul, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Erika Cunliffe, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In this delayed appeal, defendant-appellant, Antonio Sayles, appeals his convictions. For the reasons that follow, we affirm.

{¶ 2} In May 2018, Sayles was named in a 30-count indictment charging him with multiple counts of rape, kidnapping, and gross sexual imposition; most counts contained sexually violent predator and sexual motivation specifications. The charges stemmed from allegations of sexual misconduct involving Sayles's minor-aged daughter and two stepdaughters from 2011 until 2018.

{¶ 3} At trial, a jury considered DNA evidence and testimony from multiple witnesses, including each of the victims, their mother, each of the victim's social worker, and the nurse who examined and performed the rape kits on each victim. The jury convicted Sayles of 24 counts, and the court sentenced him to 100 years to life in prison.

{¶ 4} Because Sayles does not challenge on appeal the sufficiency or manifest weight of the evidence, this court will only set forth the facts as they pertain to each assignment of error.

## I. Effective Assistance of Counsel

{¶ 5} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 6} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of

reasonable performance and that he was prejudiced by that deficient performance, such that but for counsel's error, the result of the proceedings would have been different. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland* at 687-688. In short, counsel's errors must be so serious as to render the result of the trial unreliable. *State v. Jamie*, 8th Dist. Cuyahoga No. 102103, 2015-Ohio-3583, ¶ 24. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Strickland* at 689.

{¶ 7} Sayles contends in his first assignment of error that his trial counsel failed to provide him with effective representation, thus violating his rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution. Sayles raises four instances where counsel allegedly provided ineffective representation — (1) failing to provide competent representation during the plea discussion; (2) failing to object to the state's request to amend the indictment after it presented its case-in-chief; (3) failing to object to hearsay from the sexual assault nurse examination ("SANE") nurse who examined and interviewed the victims; and (4) failing to object to the testimony of each of the victim's social worker because each social worker allegedly vouched for the victim's credibility and provided inadmissible victim impact evidence.

### A. Plea Discussion

{¶ 8} A month prior to trial, the state set forth a proposed plea agreement. It would amend the rape offenses charged in Counts 1, 7, 9, 15, 19, 21, and 23 to first-degree felonies by deleting the sexually violent predator specification on each count. Deleting the specification reduced the penalty on those counts from 10-25 years to life to a possible punishment on each count of three to 11 years in prison. The state also offered to amend the rape offenses charged in Counts 3 and 17 to gross sexual imposition, a felony of the third degree, punishable by one to five years in prison. Finally, the agreement required Sayles to plead guilty to Counts 11 and 29, gross sexual imposition, a felony of the fourth degree. In exchange for guilty pleas to those counts as stated or amended, the state would nolle the remaining offenses.

{¶ 9} Sayles rejected the plea, stating he wished to proceed to trial. The trial court then engaged in a discussion with Sayles about the plea and his sentencing exposure if he were unsuccessful at trial. The court stated that he was facing a 30-count indictment and if he were found guilty on Count 21, rape of a person under 10 years in age, the penalty would be life without parole. Sayles stated that he understood.

{¶ 10} The court then explained that he was charged with four counts of rape (Counts 1, 5, 13, and 25) that if he were found guilty, he "would be looking at the imposition of 25 years to life imprisonment on each of those." The court further advised Sayles that 23 of the counts carried a possible sentence of ten years to life, and two counts were high-tiered felonies of the third degree that carried a possible

penalty of one to five years.[1]  The court also advised him about the imposition of fines, mandatory postrelease control, and sexual offender classification.

{¶ 11} The trial court then set forth the potential penalties under the plea agreement.  The court advised Sayles that pursuant to the agreement offered, the state would amend the rape offenses charged in Counts 1, 7, 9, 15, 19, 21, and 23 that carried to a life-term to now only carry a mandatory prison term of three years to 10 and/or 11 years.  The agreement would also amend Counts 3 and 17, two first-degree felonies, to "high-tier" third-degree felonies carrying a possible prison term of one to five years.  Finally, the trial court advised Sayles that the agreement also provided that he plead guilty to Counts 11 and 29, felonies of the fourth degree, carrying a possible penalty of six to 18 months.

{¶ 12} Following these advisements, the court asked:

> Mr. Sayles, have you had full opportunity to speak with your lawyer?  Because this is kind of a stunning indictment here.  You only need one finding of guilt on one of these life terms.  They are mandatory terms.  Do you understand that, sir?

Sayles responded:

> Yes.  I talked to him.  I understand.  But it's kind of hard for me to agree to something I didn't do.

(Tr. 9.)

---

[1] It appears the trial court misspoke about the third-degree felonies.  A review of the indictment reveals that the gross sexual imposition counts are fourth-degree felonies, as the trial court mentioned later in the plea discussion.  The third-degree felonies that the trial court spoke of related to the plea agreement, not the indictment.  Regardless, Sayles does not raise any argument on appeal about the sentencing exposure on these counts.

{¶ 13} Sayles rejected the plea offer, and the case proceeded to trial. Following the close of evidence, the trial court granted the state's motion to dismiss Counts 27 (rape) and 28 (kidnapping). (Tr. 615-616.) The jury found Sayles not guilty of Counts 21 (rape), 22 (kidnapping), 29 (gross sexual imposition), and 30 (kidnapping). The jury found Sayles guilty of the remaining counts, including the sexual motivation specifications. Following the verdict, the state moved to dismiss all sexually violent predator specifications from the indictment.

{¶ 14} At sentencing, the parties agreed that the rape counts merged with corresponding kidnapping counts, and the state elected that the court sentence Sayles on the rape counts — Counts 1, 3, 5, 7, 9, 13, 15, 17, 19, 23, and 25. The court noted that Counts 1, 3, 5, and 13 each carried a mandatory term of 25 years to life in prison, and the remaining rape counts carried a possible punishment of three to 11 years.

{¶ 15} Defense counsel advocated to the trial court that it did not "need to necessarily run [Counts 1, 3, 5, and 13] consecutively because it doesn't serve any additional purpose." The trial court agreed and imposed a concurrent total sentence of 25 years to life in prison.

{¶ 16} Subsequently, but prior to the court journalizing the sentence, the state advised the trial court that the concurrent 25-year-to-life sentence was contrary to law. Pursuant to R.C. 2971.03(B)(1)(c) and (E), the trial court was required to order the minimum sentences in Counts 1, 3, 5, and 13 to be served consecutively. Accordingly, the court should have sentenced Sayles on those counts

to 100 years to life in prison. Defense counsel agreed with the correction but requested that the trial court set aside the conviction because Sayles was not fully advised of the possibility that if convicted, the law required consecutives sentences on those counts. Sayles also told the court that he was unaware that the law required mandatory consecutive sentences. The court denied vacating the convictions and resentenced Sayles to an aggregate sentence of 100 years to life in prison.

{¶ 17} In this assignment of error, Sayles contends that he did not receive effective assistance of counsel during the plea discussion because counsel did not advise him that if he were found guilty of rape as charged in Counts 1, 3, 5, and 13, the court was required to run the minimum sentences on each count consecutively.

{¶ 18} To establish that ineffective assistance of counsel occurred during plea negotiations, a defendant who did not accept a plea offer must show not only that counsel rendered flawed and deficient representation, but also that there is a reasonable probability that (1) the defendant would have accepted the plea offer; (2) the offer would not have been withdrawn and would have been accepted by the court; and (3) the end result would have been more favorable to the defendant. *State v. Weakley*, 8th Dist. Cuyahoga No. 105293, 2017-Ohio-8404, ¶ 23.

{¶ 19} By citing to *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), and *Weakley*, Sayles insinuates that his counsel's inaccurate information or lack of advisement regarding his sentence exposure induced him into rejecting the plea. In both *Cooper* and *Weakley*, however, the record clearly

demonstrated that counsel's misstatements or deficiencies induced the defendants, who expressed a desire to accept a plea, to subsequently reject the plea deals offered.

{¶ 20} In this case, such inducement is lacking. Nothing in the record indicates that Sayles rejected the state's plea offer based on counsel's misstatements. Rather, the record reflects that during the plea discussion, Sayles rejected the state's plea offer because of claims of innocence — "it's kind of hard for me to agree to something I didn't do." (Tr. 9.) Rejection of a plea offer based on protestations of innocence undermines Sayles's claim that he received ineffective assistance of counsel. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 301 (argument of ineffective assistance of counsel during plea negotiations undermined by evidence that defendant rejected offer to prove his innocence); and *State Burton*, 8th Dist. Cuyahoga No. 100716, 2014-Ohio-4207, ¶ 12-13 (summarily rejecting defendant's ineffective assistance of counsel argument because the record showed that the defendant was not interested in accepting a plea).

{¶ 21} Moreover, by rejecting the plea agreement, Sayles was risking the possibility of receiving a sentence of life without parole on Count 21. Although counsel later stated during the resentencing that he and Sayles believed the evidence would not support a conviction on that count, the record is clear that Sayles accepted the risk and proceeded to trial, knowing a life sentence could be imposed.

{¶ 22} Finally, Sayles rejected the plea agreement with a full understanding that Counts 1, 3, 5, and 13 each carried a sentence of 25 years to life in prison. Even if Sayles proceeded under the misunderstanding that Counts 1, 3, 5, and 13 allowed

for concurrent sentences, the sentences still contained a life-tail. The trial court advised Sayles that "each" of those sentences carried a life-tail; thus, inferring that the court could impose those sentences consecutively. By rejecting the plea agreement, Sayles was subject to a life-sentence regardless, and nothing in the record indicates that he was concerned about his eligibility for parole. If a concern about parole existed, he would have accepted the plea agreement because it removed all life-tail exposure. We find disingenuous Sayles's argument that had he known that he could receive a sentence that amounted to a life sentence, i.e. 100 years, he would have accepted the plea. There is nothing in the record that demonstrates that Sayles would have accepted the plea offer had he known the consecutive nature of the sentence if found guilty at trial. Accordingly, we find that he did not receive ineffective assistance of counsel during the plea discussion.

## B. Amendment to the Indictment

{¶ 23} Following the state's case-in-chief, the state moved to amend the indictment to conform to the evidence presented. Specifically, the state moved to amend Counts 7, 8, 22, 23, and 24 to reflect the dates of when the offenses were alleged to have occurred based on the testimony of the victims.

{¶ 24} In Counts 7 and 8 (rape and kidnapping), the indictment provided that the offenses occurred between December 3, 2016 and December 2, 2017. The state moved to amend the date to reflect that the offense occurred between December 3, 2015 and December 2, 2016. The purpose of the amendment was "to reflect age 12 for [the victim]." (Tr. 591.) In Count 22 (kidnapping), the indictment

alleged that the offense occurred on June 1, 2012. The state moved to amend the date to reflect that the offense occurred between January 1, 2011 through June 1, 2012. The amendment would conform with the corresponding rape offense in Count 21 that alleged the same date range.[2] In Counts 23 and 24 (rape and kidnapping), the indictment provided that the offense occurred from January 1, 2015 to June 1, 2016. The state moved to amend the date to reflect that the offense occurred between March 1, 2018 to April 15, 2018. Defense counsel did not specifically object to the amendments, and the trial court granted the state's request.

{¶ 25} Sayles contends on appeal that his counsel was ineffective for not objecting to the state's motion because the amendments allowed for convictions of offenses on evidence that the grand jury did not consider, i.e. the amendment changed the nature of the offense.

{¶ 26} Crim.R. 7(D) provides that a court may amend an indictment "at any time before, during, or after a trial * * * provided no change is made in the name or identity of the crime charged." "A change in the name or identity of a crime charged occurs when the offense alleged in the indictment and the offense alleged in the amended indictment contain different elements that require independent proof." *State v. Buchanan*, 2017-Ohio-1361, 88 N.E.3d 686, ¶ 22 (8th Dist.).

{¶ 27} Sayles relies upon this court's decision in *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), for the proposition that the change in

_____

[2] The jury acquitted Sayles of Counts 21 and 22. Accordingly, any error, if at all, would be harmless by virtue of the not guilty verdict.

the date range for the offenses changed the identity of the crimes. In *Vitale*, this court found that the amendment was different from the evidence on which the grand jury issued the indictment. Accordingly, we held that because it included a different potential theft, occurring at a different address, over an expanded time period, the amendment to the indictment was prejudicial to Vitale's defense.

{¶ 28} *Vitale* is clearly distinguishable. In this case, the amendments did not change the name or identity of the crimes charged — they only changed the range of dates for the offenses as testified to by the victims. In cases involving sexual misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. *State v. Boyer*, 10th Dist. Franklin No. 06AP-05, 2006 Ohio 6992, ¶11. And unless it is detrimental to the defense, the precise time and date of an alleged offense are ordinarily not essential elements. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985) (absent material detriment to the preparation of a defense, the omission of specific dates and times is without prejudice, and without constitutional consequence).

{¶ 29} We find that the amendment was not in error, and therefore, counsel was not ineffective for failing to object. Moreover, Sayles has not demonstrated how the amendment prejudiced his defense. His defense strategy was that he never engaged in any sexual contact or conduct with the victims. Unlike where a defendant intends to use or rely on an alibi, Sayles's defense was actual innocence. *See, e.g., State v. Czech*, 8th Dist. Cuyahoga No. 100900, 2015-Ohio-1536 (vague time frames may be detrimental when presenting an alibi defense).

{¶ 30} Accordingly, Sayles has not demonstrated that counsel was ineffective by failing to object to the state's Crim.R. 7(D) amendment during trial.

### C. Failure to Object — Hearsay Testimony

{¶ 31} Kathleen Hackett, the sexual assault nurse examination ("SANE") program coordinator for Rainbow Babies and Children's Hospital and SANE nurse, stated that she conducted the victims' rape-kit examinations. She testified regarding her examination and interview with each victim.

{¶ 32} Sayles contends that counsel was ineffective for failing to object to the "nonmedical parts" of Hackett's testimony and for failing to request the court to redact those portions of her report that she obtained for use during prosecution. He claims this testimony and evidence strengthened the victims' allegations and provided a more clear and concise account of the allegations. Sayles, however, fails to specifically identify what parts of her testimony or report were objectionable.

{¶ 33} Statements made for the purposes of medical diagnosis and treatment are a clearly defined, long-standing exception to the hearsay rules. Evid.R. 803(4) provides an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Further, in considering cases of sexual assault, "courts have consistently found that a description of the encounter and identification of the perpetrator are within the scope of statements for medical treatment and diagnosis." *In re D.L.*, 8th Dist.

Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, ¶ 15. However, not every statement made by a declarant in aid of treatment is admissible under the rule: "The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted." Staff Note to Evid.R. 803(4); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 28.

{¶ 34} In this case, when viewing the entirety of Hackett's testimony and reports prepared during the examination, we find the victims' statements were admissible pursuant to Evid.R. 803(4) because they made them in aid of medical diagnosis and treatment. The victims' statements provided to Hackett allowed her to understand where injury, if any, might be present, or explain why no injury was visible. Each victim reported where the assaults occurred, described the nature and duration of the assault, how and where Sayles touched them, whether and where they experienced pain and discomfort, whether Sayles ejaculated or wore a condom, whether the touching was under on or top of clothing, and whether they engaged in consensual sexual relations. This information was for the purpose of medical diagnosis and treatment to guide Hackett in her examination and determine where potential injury may have occurred or where certain areas needed treatment.

{¶ 35} Even if portions of the victims' statements or Hackett's report were inadmissible, the error was harmless because each victim testified about each offense as it pertained to them, and to whom and when they made their disclosures.

The record reflects that counsel effectively cross-examined the victims exposing some inconsistencies and casting doubt on the allegations. The jury was able to assess the credibility of each victim and believe or disbelieve the victims where they deemed it appropriate. The jury's ability to make these credibility assessments and segregate proof is reflected in the not guilty verdicts on certain counts in the indictment. *See, e.g., State v. Bonneau*, 8th Dist. Cuyahoga No. 97565, 2012-Ohio-3258, ¶ 22 (not guilty verdict as counts pertaining to one victim and guilty verdicts as to another demonstrated jury was able to separate the evidence and consider victims separately). Moreover, our review of the record demonstrates that defense counsel effectively cross-examined Hackett about the nature of the examination and her inability to "to detect any injuries of any type in any of the three [victims]." (Tr. 585.)

{¶ 36} Accordingly, Sayles has failed to demonstrate that counsel was ineffective by failing to object to portions of Hackett's testimony.

### D. Failure to Object—Vouching for Victim Credibility

{¶ 37} Sayles contends that counsel was ineffective for failing to object to testimony from the social workers regarding the trauma the victims suffered because of the abuse. He summarily maintains that the social workers' testimony inappropriately vouched for the credibility of the victims, which amounted to improper victim impact evidence.

{¶ 38} "An expert [and law witness] may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *State v. Boston*, 46 Ohio St.3d

108, 545 N.E.2d 1220 (1989), syllabus. Such testimony is presumptively prejudicial and inadmissible because it "'infringe[s] upon the role of the fact finder, who is charged with making determinations of veracity and credibility.'" *Id.* at 128-129, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Brown, J., concurring).

{¶ 39} There is a fine line between an expert offering an opinion as to the truth of a child's statement and "testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 690 N.E.2d 881 (1998). Whereas offering an opinion on truthfulness is strictly prohibited, testimony under the second category is allowed. In *Stowers*, the court addressed the admissibility of expert testimony that the behavior of the victims was consistent with behavior observed in sexually abused children. The court found that it was admissible and did not violate *Boston* because the expert's testimony provided information to the jury that would allow it to make an "educated determination" regarding the ultimate issues in the case. The court emphasized a distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that the child has been abused." *Id.* at 262.

{¶ 40} In this case, each victim was referred to a separate therapist for the purpose of receiving counseling and treatment. Each therapist, who was also a licensed social worker, testified about the background information they received

from the referring agencies. Based on the background information and their individual interactions with the victims, all three of the social workers, like the social worker in *Stowers*, stated that the behavior of the victims was consistent with behavior observed in sexually abused children. Because the Ohio Supreme Court has stated that this type of testimony is admissible in helping the jury and does not vouch for witness credibility, trial counsel was not ineffective for failing to object to the testimony. Further, at no point did any of the social workers offer an opinion about whether the victims were telling the truth.

{¶ 41} We also find that the social workers' testimony did not rise to victim impact testimony. This court has previously held that a licensed social worker's testimony about diagnosis and treatment is not victim impact evidence as defined under the law. *State v. Ibrahim*, 8th Dist. Cuyahoga No. 102114, 2015-Ohio-3345, ¶ 42.

{¶ 42} Even if counsel were deficient in failing to object to the social workers' testimony, Sayles has not demonstrated how he was prejudiced by the deficient performance such that the result of the trial would have been different. Each victim testified about the assaults and how they felt during the sexual assaults. Again, the jury was able to assess the credibility of the victims during trial. Accordingly, we find that Sayles was not deprived of effective assistance of counsel when his counsel failed to object to the testimony of each social worker.

{¶ 43} Based on the foregoing, Sayles's first assignment of error is overruled.

## II. Inaccurate Information During Plea Discussion

{¶ 44} In his second assignment of error, Sayles contends that the trial court plainly erred by providing inaccurate information during the plea discussion about his sentencing exposure in the event of a guilty verdict following trial. Accordingly, he contends that his convictions should be set aside.

{¶ 45} Notice of plain error should be with "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error under Crim.R. 52(B) requires a finding that, but for the error, the outcome of the trial clearly would have been different. *Id.* at paragraph two of the syllabus.; *State v. Watson*, 61 Ohio St.3d 1, 6, 572 N.E.2d 97 (1991) ("Plain error does not exist unless, but for the error, the outcome * * * would have been different.").

{¶ 46} We do not find any error, plain or otherwise. Without citing to any rule or case law in support, Sayles contends that that much like in accepting a guilty plea where the defendant must be advised of the maximum penalty involved for the offenses, the same should be true for when a defendant rejects a guilty plea. We disagree. Pursuant to Crim.R. 11, the maximum penalty advisement pertains to the offenses the defendant would be pleading guilty to, not the offenses with which the defendant was originally charged. *See generally* Crim.R. 11(C); *State v. Rogers*, 12th Dist. Butler No. CA2019-11-194, 2020-Ohio-4102, ¶ 13, quoting *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 42 (Kennedy, J., dissenting)

(Crim.R. 11(C)(2)(a) "'requires the trial court to advise the defendant of the maximum penalty for each of the charges that the accused is resolving with the plea.'")

{¶ 47} In this case, the trial court engaged in a plea discussion with Sayles and addressed the consequences of not accepting the plea. The court advised him regarding Counts 1, 3, 5, and 13 that "if you are found guilty you would be looking at the imposition of twenty-five to life imprisonment on each of those." (Tr. 6-7.) Admittedly, the trial court did not advise Sayles that the trial court was required to impose the minimum terms consecutively if he were found guilty. However, because Sayles rejected the plea agreement and elected to proceed to trial, the trial court was not required to conform its plea discussions pursuant to Crim.R. 11. There is nothing in the rule that requires a trial court to compare the sentencing exposure under the plea agreement to that in the indictment.

{¶ 48} Even if there was error, Sayles has again failed in his burden to demonstrate that he would have accepted the plea agreement. We have already determined that Sayles did not receive ineffective assistance of counsel during the plea discussion because Sayles failed to demonstrate that he would have accepted the plea agreement had he known the mandatory consecutive nature of the sentences imposed in Counts 1,3, 5, and 13. We further find that the trial court did not commit plain error by failing to advise Sayles that if he was found guilty of Counts 1, 3, 5, and 13, the court was required to impose the minimum terms consecutively. Again, Sayles has failed to demonstrate that the outcome of the

proceedings would have been different had he been advised that those counts carried mandatory consecutive sentences. Without such a demonstration, this court will not recognize that plain error occurred.

{¶ 49} Accordingly, Sayles's second assignment of error is overruled.

## III. Inadmissible Evidence

{¶ 50} Without citation to the record, Sayles contends in his third assignment of error that the trial court erred in allowing the victims' mother to vouch for the credibility of one of the victims. He summarily contends that the "error's impact was harmful" because the case hinged on credibility.

{¶ 51} Our review of the record reveals that during cross-examination, counsel questioned mother about her younger daughter's truthfulness. (Tr. 274.) On redirect, the prosecutor followed up about daughter's truthfulness and whether her children lie. (Tr. 279-280.) She explained that they do not lie, but tell "small fibs." (Tr. 280.) The prosecutor then questioned: "Have they ever lied to you about anything like, 'I was raped by my step-dad,' they ever lie to you about that? Is that the sort of lie we're dealing with here?" (Tr. at *id.*) Over objection, mother responded "no." (Tr. at *id.*)

{¶ 52} A trial court has broad discretion concerning the admission of evidence; in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162, ¶ 25 (10th Dist.), citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

**{¶ 53}** Lay witnesses are prohibited from testifying as to another witness's veracity. *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 113, citing *State v. Kovac*, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 32 (2d Dist.). "[I]t is the fact-finder, not the so-called expert or lay witness, who bears the burden of assessing the credibility and veracity of witnesses." *Boston*, 46 Ohio St.3d at 129, 545 N.E.2d 1220.

**{¶ 54}** In this case, even if we find that mother vouched for the credibility of her daughter, violating *Boston*, the error was harmless. A *Boston* violation may be harmless error beyond a reasonable doubt "(1) if the victim testifies and is subject to cross-examination, (2) the state introduces substantial medical evidence of sexual abuse, and (3) the expert or lay person's opinion testimony is cumulative to other evidence." *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 44, citing *State v. Palmer*, 9th Dist. Medina No. 2323-M, 1995 Ohio App. LEXIS 514 (Feb. 8, 1995). Moreover, this court has implied that "*Boston* does not apply when the child victim actually testifies and is subjected to cross-examination." *Djuric*; *State v. Benjamin*, 8th Dist. Cuyahoga No. 87364, 2006-Ohio-5330, ¶ 19

**{¶ 55}** In this case, all three victims testified and were subject to cross-examination. Additionally, the state introduced DNA evidence obtained from the inner thigh area of the younger daughter — the victim whose mother allegedly vouched for her credibility. This DNA was consistent with Sayles's DNA profile. Accordingly, we find that any *Boston* violation was harmless beyond a reasonable doubt.

{¶ 56} Accordingly, Sayles's third assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR