[Cite as *State v. Eick*, 2023-Ohio-4144.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2022 AP 09 0033 |
| DEAN EICK | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
Pleas, Case No.  2021 CR 06 0194


JUDGMENT:                                        Affirmed


DATE OF JUDGMENT ENTRY:          November 16, 2023


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KRISTINE W. BEARD                   DONOVAN R. HILL
ASSISTANT PROSECUTOR          122 Market Avenue North
125 East High Avenue                 Dewalt Building Suite 101
New Philadelphia, Ohio  44663     Canton, Ohio  44702

*Wise, J.*

**{¶1}** Appellant Dean Eick appeals his convictions entered in Tuscarawas Common Pleas Court following a guilty plea on one count of gross sexual imposition and guilty verdict on a sexually violent predator specification, entered after a bench trial.

**{¶2}** Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** For purposes of this appeal, the relevant facts and procedural history are as follows:

**{¶4}** On June 11, 2021, Dean Eick, (whose date of birth is March 3, 1951), touched the vaginal area of a child less than thirteen (13) years of age. The incident occurred at Freddy's restaurant both near the cash register and under the table while the child was dining, in the presence of her mother, a friend and other customers.

**{¶5}** The entire act was captured on two video surveillance cameras in the dining room.

**{¶6}** On June 17, 2021, Appellant Dean Eick was indicted by the Tuscarawas County Grand Jury for one count of Gross Sexual Imposition involving a child less than thirteen years of age, in violation of R.C. §2907.05(A)(4), a third-degree felony, with prior convictions for gross sexual imposition, and a Sexual Violent Predator Specification, in violation of R.C. §2941.148(A).

**{¶7}** Appellant pled not guilty at the arraignment.

**{¶8}** On October 28, 2021, a change of plea hearing was held. Prior to the plea, the trial court granted Appellant's motion to sever the Sexually Violent Predator Specification for a bench trial.

{¶9}    Although the trial court advised Appellant of the potential prison sentences, that being nine, twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four or up to sixty months for a Gross Sexual Imposition charge, the trial court failed to advise Appellant that due to his prior convictions he faced a mandatory sentence with a maximum mandatory sentence of sixty (60) months.[1] (Trial T. at 5-7).

{¶10}  Following, the trial court's Crim.R.11 colloquy, Appellant entered a plea of guilty to the count of gross sexual imposition. The Sexually Violent Predator Specification was set for a bench trial.

{¶11}  On October 26, 2021, a bench trial commenced on the Sexually Violent Predator Specification. Prior to the presentation of evidence, the trial court advised Appellant that at the time of his plea on Gross Sexual Imposition, the court improperly advised him that there was a presumption for a prison sentence and that he would be eligible for community control. The trial court advised Appellant that the indictment included a section setting forth that Appellant was previously convicted of a violation of this section (R.C. §2907.05(A)(4)), and the victim in the prior conviction was less than thirteen (13) years of age. The trial court explained to Appellant that because of this prior conviction, pursuant to R.C. §2907.05(C)(2), the court would be required to impose a mandatory prison term. (Trial T. at 6). The trial court advised Appellant that due to the colloquy error, Appellant could argue that his guilty plea was not made knowingly, voluntarily and intelligently, and that the court would grant a motion to withdraw his plea. (Trial T. at 7). Specifically, the trial court advised:

---

[1] These statements were made by the trial court to Appellant prior to the commencement of the bench trial. No transcript of the plea hearing was filed.

It is mandatory time. Mr. Eick, I wanted to make sure you knew at this point in time because under the law, I believe if you wanted to, you could say, 'I didn't know that. I wasn't aware of that and I didn't enter my plea knowing what the potential penalties were and therefore, I want to withdraw it' and if you said all those things, Mr. Eick, I would understand and I would allow you to withdraw your guilty plea because it is different than what the state put in the document and that I should have told you.

**{¶12}**   (Trial T. at 7).

**{¶13}**  The trial court also informed Appellant and his counsel that they could have as much time as they needed to decide whether Appellant would be moving to withdraw his guilty plea. Counsel responded on behalf of Appellant and stated that they understood at the time of sentencing that the court would likely impose a prison term and that community control would not be likely.

**{¶14}**  Appellant's trial counsel stated, "So I don't think that changes the game for us." (Trial T. at 8). Appellant personally responded that this was also his understanding of the consequences of the plea, and that he did not wish to withdraw his plea and wanted to go forward with the bench trial on the remaining Sexually Violent Predator Specification. (Trial T. at 8-9).

**{¶15}**  The matter then proceeded to the presentation of evidence on the Sexually Violent Predator Specification. During the trial, the State presented the testimony of the minor child's mother, a video tape of the incident that led to the charge in the indictment, and evidence of Appellant's prior conviction on two counts of Gross Sexual Imposition,

in Stark County Court of Common Pleas Case No. 2010 CR 0462, a conviction that involved two separate, unrelated victims.

{¶16}  Melissa Fry, the child victim's mother, testified that she has one child, whose date of birth is July 21, 2009. She identified Appellant as a man she knew as a co-worker when she worked at Schoenbrunn Landscaping. (Trial T. at 14). On the day in question, her daughter and her daughter's friend were involved in a Girl Scout community service project at Buehler's Foods in New Philadelphia. She told the girls that, as a treat, she would take them for ice cream at Freddy's, a local restaurant in Dover on Wooster Avenue. (Trial T. at 15). She testified that Appellant approached them at Buehlers, heard their conversation, and asked if he could go with them to Freddy's. (Trial T. at 19). She testified that after they were seated she became concerned when she saw Appellant's forearm flexing under the table. She then leaned across the table and asked her daughter what was going on. (Trial T. at 20). She stated her daughter looked at her with big eyes, said "mom", she looked down, knew something was definitely wrong and told her [her daughter] to get up and go to the restroom. She then excused herself and went to the restroom to talk with her daughter. In the restroom her daughter told her "he [Appellant] was squeezing my vagina and he was squeezing it hard." (Trial T. at 22). When they came out of the bathroom, they discovered that Appellant had left the restaurant. (Trial T. at 22). Ms. Fry identified the video, which was played for the court, as a true and accurate description of what happened while they were at Freddy's restaurant. (Trial T. at 24).

{¶17}  On February 14, 2022, in open court, the trial court announced its verdict of guilty on the Sexually Violent Predator Specification. (Verdict T. at 4). During the hearing,

the trial court addressed R.C. §2971.01(H)(2)(f) of the Sexual Specification Statute, which allows the court to consider "any other relevant evidence". With reference to that section, the trial court made the following comments:

It's a pretty broad category [R.C. 2971.01(H)(2)(f)], Mr. Eick, and in my review of the law, it seems to be reserved for extraordinary circumstances and, in this case, Mr. Eick, I reviewed the video that was submitted in this case, I listened to all the evidence that I heard and the act itself of Gross Sexual Imposition is depicted in the video. I don't know if anyone would be shocked over the conduct but, Mr. Eick, it's the location in which it takes place that needs to be taken into consideration and it also need to be taken into consideration, I think what would be a complete lack, a complete disregard for, I guess, the fact that others. It's a bustling restaurant where this is taking place. After a consideration of all the evidence, the trial court found that the State of Ohio had proven beyond a reasonable doubt all the elements of a Sexually Violent Predator Specification.

**{¶18}** (Verdict T. at 4).

**{¶19}** On March 29, 2022, at the sentencing hearing, the trial court described the video as follows:

[A]n incredible video that documents everything that happens walking through the door to you almost being giddy in line. You couldn't keep your hands off of her, her behind, when you are ordering the food while her mother is standing there. You still couldn't help yourself despite the fact

that they're there on what is really a complete-you might know the mom but the young girl is a complete stranger to you to the point where you're seated at the table and I've never seen a video that documents the plan as it unravels. You can see you slowly move the table for the purpose of concealing your hands. Your hands move ever so slowly down your own leg to the point where you can tell you got the nerve to move them over to her leg and after you take that step it was almost as if you wouldn't give up for dear life. There are people walking by. At one point, there is her friend. It looks as if she is looking directly at your hand on what looks like her vagina and you still don't move. All the while her mother is seated at the same table where this is going on. Mr. Eick if you are willing to do that, I'm convinced you are willing to do it again. There were all kinds of stop signs that would have stopped any reasonable person from doing any of this conduct and you blew right through all of them to get what you wanted to do.

**{¶20}** (Sent. T. at 12).

**{¶21}** The trial court then sentenced Appellant to serve a maximum mandatory sentence of five (5) years with a life tail for the Sexually Violent Predator Specification conviction.

**{¶22}** It is from this conviction and sentence that Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE TRIAL COURT ERRED IN ISSUING A GUILTY VERDICT ON THE SEXUALLY VIOLENT PREDATOR SPECIFICATION BECAUSE THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} "II. THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S PLEA OF GUILTY AS IT WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY."

**I.**

{¶25} In his first assignment of error, Appellant argues that the trial court's guilty verdict on the Sexually Violent Predator Specification was against the manifest weight of the evidence. We disagree.

{¶26} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175,485 N.E.2d 717 (1983).

{¶27} In the instant case, Appellant was found guilty of violating the Sexually Violent Predator Specification, as set forth in R.C. §2971.01, which defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent

offenses." In other words, three factors must exist before a defendant may be labeled as a sexually violent predator: (1) the offense occurred on or after January 1, 1997; (2) the defendant commits a sexually violent offense; and (3) it is likely that the defendant will engage in at least one more sexually violent offense in the future. R.C. 2971.01(H)(1).

{¶28} Thus, the key inquiry for finding a defendant to be a sexually violent predator is whether the person is likely to engage in sexually violent offenses in the future. For that determination, R.C. §2971.01(H)(2) provides the following:

(2) For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

{¶29} R.C. §2971.01(G)(1) defines "Sexually violent offense" as "a violent sex offense."

{¶30} Further, under R.C. §2971.01(L)(1), "Violent sex offense" means any of the following: (1) A violation of section 2907.02, 2907.03, or 2907.12 or of division (A)(4) or (B) of section 2907.05 of the Revised Code; (emphasis added).

{¶31} Appellant herein argues that his Sexually Violent Predator Specification conviction is against the manifest weight of the evidence because neither R.C. §2971.01(H)(2)(a) nor any other factors enumerated in R.C. §2971.01(H)(2) apply.

{¶32} Unlike R.C. §2971.01(H)(1), which requires the existence of the three factors, R.C. §2971.01(H)(2) merely contains factors that *may* be considered as evidence indicating a likelihood that the person will engage in a sexually violent offense in the future. *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 36; *State v. Wooten*, 9th Dist. Lorain No. 13CA010510, 2014-Ohio-3980, ¶ 36.

{¶33} R.C. §2971.01(H)(2) provides a nonexclusive list of factors that the trial court "may" use in determining that a defendant is likely to engage in sexually violent offenses in the future, and the trial court is free to consider "any other relevant evidence" as provided in the catchall provision of R.C. §2971.01(H)(2)(f). *State v. T.E.H.*, 10th Dist. Franklin Nos. 16AP-384, 16AP-385, and 16AP-386, 2017-Ohio-4140, ¶ 72, citing *State v. Sylvester*, 8th Dist. Cuyahoga No. 103841, 2016-Ohio-5710, ¶ 12-13.

**{¶34}** Here, the trial court found, based on the evidence presented at trial, that Appellant committed the offense in a public place, in the presence of the child's mother and other Appellant also had prior convictions with the two separate victims, a prior term of incarceration, and post-release control. The court also considered the relationship between the parties, and Appellant's abuse of that relationship to commit the instant offense. As such, there was compelling evidence in the record for the trial court to find that Appellant is likely to engage in a sexually violent offense in the future under R.C. §2971.01(H)(2).

**{¶35}** The trial court in this case was in the best position to judge the credibility of the witnesses by observing them during their testimony, and we have held that "this court must refrain from substituting our judgment on a cold record for that of the fact finder." *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77; *Coventry v. Turrin,* 5th Dist. Tuscarawas No. 1999AP040023, 2000 WL 492944.

**{¶36}** Accordingly, based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. This Court will not disturb the trier of fact's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

**{¶37}** Appellant's first assignment of error is overruled.

**II.**

**{¶38}** In his second assignment of error, Appellant argues that his guilty plea was not entered knowingly, intelligently and voluntarily. We disagree.

**{¶39}** Criminal Rule 11 requires guilty pleas to be made knowingly, intelligently, and voluntarily. Although literal compliance with Crim.R. 11 is preferred, the trial court need only "substantially comply" with the rule when dealing with the non-constitutional elements of Crim.R. 11(C). *State v. Ballard*, 66 Ohio St.2d 473, 475, 423 N.E.2d 115(1981), *citing State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163(1977).

**{¶40}** The constitutional rights are: (1) a jury trial; (2) confrontation of witnesses against him; (3) the compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. *Id.* at ¶ 31.

**{¶41}** The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 423 N.E.2d 1224, ¶ 19-26, (post-release control is a non-constitutional advisement).

**{¶42}** For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15. Furthermore, a defendant who challenges his guilty plea on the basis that the advisement for the non-constitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶ 15; *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163(1977).

**{¶43}** When reviewing a plea's compliance with Crim.R. 11(C), we apply a *de novo* standard of review. *State v. Nero,* 56 Ohio St.3d 106, 108-109, 564 N.E.2d 474 (1990); *State v. Lebron,* 8th Dist. Cuyahoga No. 108825, 2020-Ohio-1507, ¶ 9; *State v. Groves,* 5th Dist. Fairfield Nos. 2019 CA 00032, 2019 CA 00033, 2019-Ohio-5025, ¶ 7.

**{¶44}** Evidence of a written waiver form signed by the accused is strong proof that the waiver was valid. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854(1988); *see North Carolina v. Butler*, 441 U.S. 369, 374-375, 99 S.Ct. 1755, 1758-1759, 60 L.Ed.2d 286, 293(1979); *State v. Dennis*, 79 Ohio St.3d 421, 425, 1997-Ohio-372, 683 N.E.2d 1096, 1102(1997).

**{¶45}** Here, Appellant argues that his plea of guilty to the charge of gross sexual imposition was not made knowingly, voluntarily or intelligently because the trial court failed to properly advise him that upon a conviction on the Sexually Violent Predator Specification, the trial court would be required to impose a life tail on the underlying sentence.

**{¶46}** Appellant has not provided this Court with the transcript of the plea hearing, and this Court therefore must presume regularity in the plea proceeding. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385 (1980)

**{¶47}** Further, Appellant pled guilty to the charge of Gross Sexual Imposition, he did not plead guilty to the Sexually Violent Predator Specification. The trial court's duty at the plea hearing was to ensure that Appellant's guilty plea to the GSI charge was entered knowingly, intelligently, and voluntarily.

**{¶48}** Pursuant to Crim.R. 11, the maximum penalty advisement pertains to the offenses the defendant would be pleading guilty to, not the offenses with which the defendant was originally charged. *See generally* Crim.R. 11(C); *State v. Rogers*, 12th Dist. Butler No. CA2019-11-194, 2020-Ohio-4102, ¶ 13, quoting *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 42 (Kennedy, J., dissenting) (Crim.R. 11(C)(2)(a) " 'requires the trial court to advise the defendant of the maximum penalty for each of the charges that the accused is resolving with the plea.' ") *State v. Sayles*, 8th Dist. Cuyahoga No. 108524, 2020-Ohio-5508, ¶ 46.

**{¶49}** Nowhere in Crim.R. 11 does it state that the court must ensure that the defendant understands charges or specifications to which he is not entering a plea. *State v. Seller*, 7th Dist. Mahoning No. 06-MA-192, 1008-Ohio-538, ¶54; *State v. Hall*, 6th Dist. Lucas No. L-22-1173, 2023-Ohio-1229.

**{¶50}** Based on the foregoing, the lack of a transcript, and the presumption of regularity, we do not find that Appellant's plea was not knowingly, voluntarily or intelligently made and find no error in the trial court's acceptance of Appellant's plea of guilty to the charge of gross sexual imposition.

**{¶51}** Appellant's second assignment of error is overruled.

**{¶52}** For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is affirmed.


By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.


JWW/kw 1115